# Bell *et al. v.* Denson.

*Statutory Real Action in Nature of Ejectment.*

1. *Secondary evidence of mortgage; when admissible.*—The execution of a mortgage on land cannot be proved, as a fact tending to show ownership or possession, without either producing it, or accounting for its absence.

2. *Adverse possession; what constitutes.*—Possession, without written color of title, is adverse only to the extent of the actual occupancy, and must be by acts suitable to the character of the land; but, being such, it matters not what its purpose is,—whether it be for residence, cultivation, or digging for ores; and a charge which restricts it to land used for two of these purposes only, while the evidence also shows the third, is erroneous.

3. *Same.*—Continuity is an essential element of an adverse possession; but the mere intrusion of a trespasser, not brought to the knowledge of the party in possession, nor continuing long enough to raise a presumption that it was known to him, is not an interruption of his possession, and does not change its character.

4. *Charge misleading jury.*—A charge given, which asserts a correct legal proposition, but has a tendency to mislead the jury, is not a reversible error: an explanatory charge should have been requested.

APPEAL from the Circuit Court of Cleburne.

Tried before the Hon. WM. L. WHITLOCK.

This action was brought by James H. Bell, William Dothard, and Benjamin J. Sitton, against Levi P. Denson and James Denson, to recover a certain tract of land in said county, which was described as "the west half of section six (6), township seventeen (17), range eleven (11)," together with damages for its detention. The record does not show at what time it was commenced. The defendants pleaded, "in short by consent, the general issue, and the statutes of

limitation of ten and twenty years;" and issue was joined on each of these pleas.

"On the trial," as the bill of exceptions states, "the plaintiffs introduced the following evidence of title: 1st, a patent for the land from the United States, to Trammell, Goodwin, and Vann, dated October 19, 1840, it being a part of the Creek Indian lands; 2d, a deed from William Vann to George W. Trammell, for an undivided third interest in said lands, dated April 23, 1842; 3d, a deed from F. A. Trammell, as the administrator of George W. Trammell, deceased, to William Dothard (one of the plaintiffs), dated August 17, 1870, for all interest of said deceased in said land, in connection with a transcript from the Probate Court of Chambers county, showing an application by said administrator to sell said lands, an order of sale, and confirmation thereof, and order to convey, and purchase by said Dothard,—all regular. The plaintiffs next introduced David Creamer as a witness, and proposed to prove by him that James Bell, sr., executed a mortgage on an undivided interest in said land, before the war, to the brother of said witness; this being offered by plaintiffs as tending to show possession by said Bell, with a view to introduce deeds from said James Bell to plaintiffs (Bell and Sitton) to certain undivided interests in said land, hereinafter set out. The court refused to allow plaintiffs to make said proof, and plaintiffs excepted."

"The plaintiffs proved, by said Creamer, that he saw said James Bell on said land in 1866, with Dr. Beasley and some hands, digging in a rock vein of gold; the south half of said land being a part of the old Arbacoochee gold mines. The plaintiffs introduced a deed from said James Bell to said James H. Bell (plaintiff), dated in June, 1867, for one-fourth part of three-eighths interest in said land; also, a deed from said James Bell to said B. J. Sitton (plaintiff), dated the 27th May, 1869, for an undivided one-eighth interest in said lands;" and two other subsequent deeds between the same parties, for small fractional interests. "The plaintiffs introduced William Beggs as a witness, who gave evidence tending to show that Levi P. Denson, one of the defendants, paid gold rent on said land, from the spring of 1848, to the fall of 1849, to said witness, for T. & W. Dothard; that T. Dothard told defendant he had now got the land, and that he must pay rent to him, said Dothard; and that said T. Dothard, in the same year, gave permission to Denson, the elder, to build the house on said land where he now lives. William Hederick proved, that in 1849 he cultivated the Tharpe field in oats, and paid rent to T. & W. Dothard; that said field is now inclosed in the field said Levi P. Denson

has around his house on the land sued for; that he took a lease, in 1867, on a part of said land, from Dothard (plaintiff), and cleared five or six acres, and cultivated the land two years, and that defendants made no objection. William Price, a witness for the plaintiff, testified, that one Felton Pruitt went into possession of a part of said land in 1861, by permission of plaintiffs, and built a house thereon, and cleared a field, and lived there until he died, some three or four years ago; and that said Dothard (plaintiff) took possession of said house and land after the death of said Pruitt, and had paid the taxes on the said land for a number of years last past. By John Weathers, an old miner, that he worked on said land in 1848-9, and paid rent to said Beggs, for T. & W. Dothard. By W. H. Green, that said defendant told him, in 1867, he owned no land, but lived on a disputed claim. By Lewis Coffey, who was tax assessor for said county in 1874, that he applied to said Levi P. Denson to give in his property; who said that he owned no land, and gave in none.

"James H. Bell (plaintiff) testified, that said Denson told him, in 1863, that he was doing better than any body, as he had no rent nor taxes to pay, and the land he was living on. would come into market soon, and he would buy it. The proof tended to show, that said Denson went on said land in the fall of 1852, and built a house near the east line, and near the centre (north and south), and inclosed a field of some ten or twelve acres about his house, said house being on the north-east quarter of the south-west quarter of said land, and the field extending a short distance on the south end of the south-east quarter of the north-west quarter. Said Denson had also cleared and inclosed a field of twenty-five or thirty acres, in the south-east corner of the south-west quarter. Said Dothard (plaintiff) also had a field of five or six acres, extending over on the said south-west quarter of south-west quarter, and adjoining Denson's said field. The Pruitt house and field were on the north-west quarter of the south-west quarter. The proof tended to show, that said Denson, since 1852, had been working on said land, south of his house, for gold; and that the other parts of said land were uninclosed, not worked for gold, and in the woods. Sitton testified, that he went upon the land in 1867, with James Bell, with a view to see it, and to buy an interest in it from said Bell; that they went to the house of said L. P. Denson on the premises, when Bell told him that he was about to sell the land to said witness, and that Denson made no objection.

"The defendant introduced evidence, tending to show that

he, said Levi P. Denson, bought said land, in 1844, from Cur-
rin Petit, and paid him his interest in certain gold, which he
had deposited with said Petit, and the amount of which he
could not state exactly, but thought it might be $200; that
he went in possession of said land in 1852, and built houses,
and cleared land, as hereinbefore set out, and has lived on
said land ever since, paying rent to no one; that the trade
between him and said Petit was entirely verbal, and no
writing of any kind was executed. Several witnesses testi-
fied, on the part of the defendants, that said L. P. Den-
son moved upon said land in the fall of 1852, and had
lived there, continuously and uninterruptedly, from that time
to the present; that the defendants had cleared and culti-
vated portions of said land, and dug for gold on other por-
tions, and have all this time been exercising control of said
land.

"The plaintiffs requested the court to give the following
charges, which were in writing : '1. If the jury believe, from
the evidence, that the defendants' possession was adverse,
yet, if they claimed under a verbal claim only, that pos-
session can extend only to that part actually inclosed by
them for farming purposes, and the portion actually worked
by them (or either of them) for gold; and they cannot set
up such adverse claim to that portion of the land which is
not so occupied by them.' '2. That, if the jury believe, from
the evidence, that Dothard (plaintiff) went into the posses-
sion of any part of said land, within ten years from the time
said Denson took possession, then that stopped the statute
of limitations from running from that time, as to the whole
of the land sued for.' The court refused each of these
charges, and the plaintiffs excepted to the refusal of each.

"The defendants requested the court to give the following
charges to the jury, which were in writing : '1. That a
knowledge by one in possession, claiming title, that his ti-
tle is defective, does not prevent such possession from be-
ing adverse.' '2. That notice is necessary to constitute ad-
verse possession by one who went into possession under an-
other, but it may be inferred from facts and circumstances.'
'3. That it is wholly immaterial what Sitton paid for an in-
terest in the land, if defendants have held the land adversely
for more than ten years before the commencement of the
suit.' '4. That the payment or non-payment of taxes is no
evidence of want of title.' '5. That if said L. P. Denson
bought the land in dispute from Petit, under a parol con-
tract, and, at the time of the purchase, paid any of the pur-
chase-money, and went into possession of the land, then said
Denson has an adverse possession of said lands, and is en-

titled to protect himself in this suit under an ad verse claim, upon actual or constructive notice of such claim.' '6. That constructive notice, in law, is such a state of facts as will put a fair and just mind upon inquiry.' '7. That if the defendant, upon such purchase, went into possession of said land, built houses and stables, and cleared and tended at least fifty acres of said land, in the customary crops of the country ; then the jury may look to all the facts, to determine whether plaintiffs had constructive notice of an adverse holding by said Denson.' '8. That if the jury believe, from the evidence, that said L. P. Denson was in adverse possession of the land sued for, at the time the deeds of James Bell were made, then said deeds are void, and convey no title to said James H. Bell and Sitton.' The court gave these charges, and the plaintiffs excepted separately to each one of them."

The rulings of the court on the evidence, the charges given, and the refusal of the several charges asked, are now assigned as error.

JAMES AIKEN, for appellant.

G. C. ELLIS, with WATTS & SONS, *contra.*

BRICKELL, C. J.—The evidence proposed to be made by the witness Creamer, that Bell, before the war, had executed a mortgage on the premises, was properly rejected. If the mortgage was material, it should have been produced, or its absence accounted for, before parol evidence of its existence could be received.

2. Actual, visible, uninterrupted possession, hostile to the true owner, tolls his entry, if continued for the period prescribed by the statute of limitations. When the possession is without written color of title, defining the quantity, or boundaries of the land claimed, it is adverse only to the extent of the actual occupancy.—2 Smith's Lead. Cases, 565 ; *Golson v. Hook,* 4 Strobh. 23 ; *Jackson v. Shoonmaker,* 2 Johns. 230 ; *Jackson v. Warford,* 7 Wend. 62 ; *Farley v. Smith,* 39 Ala. 38. This is not, however, the principle asserted in the first charge requested by the appellants. The error of the charge lies in limiting the adverse possession of the lands to such parts as were actually inclosed for farming purposes, and the part actually worked for gold. The inclosure is but one act indicating possession and claim of ownership. There are many other acts, equally indicative of possession and the claim of ownership. The erection of houses, followed by subsequent occupancy, would be, perhaps, to a jury, more

[Bell et al. v. Denson.]

evincive of possession and ownership, though they were never surrounded by inclosures, than inclosures of fields, sometimes cultivated and sometimes lying uncultivated. The possession must be by acts suitable to the character of the land; and being such, it matters not what is its purpose, whether for cultivation, digging for ores, or for residence. Limited as the charge is in terms, it would have justified the jury in supposing that the houses, in which the appellants resided, were not held adversely, though the lands inclosed for farming, and the lands which had been occupied in digging for gold were, and would thus have misled them. There was no error in its refusal.

3. Continuity is an essential element of the possession which bars the entry of the true owner, and ripens into a title in the adverse possessor. The unknown intrusions of mere trespassers will not interrupt the continuity, unless continued for such a length of time as to become assertions of adverse right.—*Farmer v. Eslava*, 11 Ala. 1028. The entry of ·Dothard, if not on that part of the land of which Denson had actual possession, was not an interruption of his possession, and worked no change in its character. It was not an invasion of Denson's rights, as dependent on his possession, and gave him no cause of action, or opportunity of asserting his claim. The second charge requested was, therefore, properly refused. It was properly refused, also, because the entry of Dothard may have been but momentary, without Denson's knowledge.

4. It may be that one or more of the charges given, on the request of the appellees, had a tendency to mislead the jury. That, however, is not a reversible error; the appellants should have requested explanatory instructions.—1 Brick. Dig. 344, § 129. It cannot be affirmed that either of these charges is erroneous in the statement of legal principles.

The judgment is affirmed.