# Doe, *ex dem.* Hughes *v.* Anderson·

*Ejectment against Purchaser at Tax-Sale.*

| 79 | 209 |
| --- | --- |
| 98 | 189 |
| 79 | 209 |
| 103 | 425 |
| 104 | 443 |
| 104 | 631 |
| 79 | 209 |
| 115 | 510 |
| 79 | 209 |
| 116 | 519 |
| 79 | 209 |
| 122 | 405 |
| 79 | 209 |
| 123 | 136 |
| 79 | 209 |
| 142 | 700 |

1. *Limitation of action.*—Five years is the statutory limitation of an action to recover lands sold for the non-payment of taxes (Code, § 464), and this has been judicially construed to mean five years from the delivery and registration of the deed, properly executed and acknowledged.

2. *Tax-deed as color of title.*—A tax-deed, though invalid as a muniment of title, may give color of title, and operate to fix and define the boundaries of an actual possession.

3. *Adverse possession; continuity of inclosure.*—Possession, such as may ripen into a title under the statute of limitations, must be continuous, and must be evidenced by acts suitable to the character of the lands; and where they consist of open, uninclosed suburban lots, susceptible of cultivation, and are cultivated each year, the continuity of the possession is not destroyed because the fences, when not necessary for the protection of the crops, are suffered to become dilapidated.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by John W. Hughes and the children of Mason Harwell, deceased, against Pelham J. Anderson, and was commenced on the 19th May, 1883. The lands sued for consisted of three lots, Nos. 2, 6, and 7, of block No. 1, of the "Peacock track" of land, adjoining the city of Montgomery on the south-west. The said track of land had belonged to Mrs. Catherine Baker, and was devised by her to Mrs. Eliza Peacock for life, with remainder to her five children, one of whom was William Williamson. Under a special act of the General Assembly, approved Nov. 21, 1863, the lands were sold by the administrator with the will annexed of Mrs. Baker, and the lots in controversy were bought at that sale by said Williamson. Mrs. Peacock died in 1866, and said lots were sold, in 1867, under execution against said Williamson, said Hughes and Harwell becoming the purchasers. This was the plaintiffs' title, and the bill of exceptions adds : "It did not appear that either said Williamson, or those holding under him through said sheriff's sale, had ever been in possession of the lands. The defendant's title was the statute of limitations of five years, under claim of adverse possession, under tax-sales ; and the want of title in plaintiff's lessors was also a ground of defense."

"On the trial," as the bill of exceptions states, "the evi-

14

[Doe, ex dem. Hughes v. Anderson.]

dence showed that two of the lots sued for (Nos. 2 and 6), and nine-tenths of the third (No. 7), were sold in 1871 and 1872 for the non-payment of taxes, and were purchased by the defendant (Anderson), to whom deeds were made by the judge of probate in 1873 and 1874, which deeds were duly recorded within twelve months after their date. There was evidence tending to show that the defendant had been in actual adverse holding and possession of the lots sued for, for the full period of five years before the commencement of this suit, by inclosing and farming on the same by his tenants. But there was, also, evidence tending to show that said lots were open and uninclosed, lying in the vicinity of the city of Montgomery, were suitable for cultivation, and without any improvements thereon at the date of said sales for taxes ; and the plaintiffs' evidence tended to show, also, that no inclosure of said lots was made, or any cultivation of them had, or any improvements put upon them, five years before the commencement of this suit. There was, also, evidence tending to show that the defendant's occupancy and holding of said lots, after the same commenced, was by renting the same to tenants who lived near by, who engaged to fence the same, and did fence the same, and cultivate crops thereon ;. that the first fence placed on or around said lots was of a very inferior and unsubstantial nature, being of small willow poles, some of them tied with bark to posts of the same materials ; that this was erected in the spring of the year, and was entirely gone in a few months thereafter, being taken away, and not replaced until the next spring ; that this occurred for several successive years ; that the land was open, on the removal of the fence, and without any improvements upon it ; and that this period, during which the fence was destroyed or removed and replaced the next spring, was a part of the period necessary to make out the five years under the statute of limitations. The evidence upon this point was, that the first fence was put up in the spring of the year, the witnesses differing as to the particular year ; that the lands were plowed up, and a crop planted on them. The plaintiffs' witnesses testified, that the fence was pretty much all gone by August of that year, and the cattle were on the crops ; while the defendant's witnesses testified, that the fence was destroyed after the crops were gathered in the fall, and at no time was it entirely taken away ; but all the witnesses agreed that the inclosure was restored the next spring, in time to prepare the land for a crop. As to the removal of the fence, the testimony was only as to the eastern side of the lots."

A witness for the defendant, who had done some work for the defendant's tenants on the land, "and who had no interest in the suit," testified as to the time when the fence was first

[Doe, ex dem. Hughes v. Anderson.]

erected, and refreshed his memory by using a memorandum-book, the entries in which were made, he said, at the dates ·specified ; but there was evidence on the part of the plaintiffs, by experts, tending to show that the dates had been changed.

The plaintiffs asked the following charges in writing, which were refused by the court, and exceptions duly reserved to their refusal :

" 1. If any witness in this case has shown deliberate corruption in his testimony, without any apparent interest in the controversy, it is the province and duty of the jury, if possible, to attribute the source of the corruption to where reason and common experience would place it; and if it is thus traced to either of the parties to this suit, the jury should regard with doubt and suspicion all the evidence of such party ; and it is the experience of mankind, and an ordinary rule of human conduct, that a person will not, without some motive of cupidity or revenge, deliberately perjure himself, when he has no interest in the controversy.

" 2. If the jury believe, from the evidence, that one-tenth of lot No. 7 was not sold to Anderson, and that he had no deed to said one-tenth, and that his possession of the premises was overt and notorious, and of such a nature as, of itself, to give notice to the co-tenants, plaintiffs, that an adverse possession and actual disseizin was intended to be asserted against them ; then the statute of limitations of five years would not.avail as a defense to lot No. 7.

" 3. If, after the crop is gathered, the fences are removed, and the land turned out as a common, having [leaving ?] nothing on it to indicate an adverse·possession, there is a break in the continuity of possession, no matter what may have been the intention about returning into possession."

The court gave the following charges at the instance of the defendant, exceptions to each being duly reserved by the plaintiffs :

1. " If the jury believe that the judge of probate of Montgomery county executed the deeds read in evidence, conveying to the defendants lots Nos. 2 and 6 and nine-tenths of No. 7, here sued for ; and that said deeds were delivered to said defendant, and recorded in the office of said probate judge, as certified on the back of said deeds ; and that the defendant, more than five years before the commencement of this suit, rented out said lands ; and that the tenants to whom he rented them, occupied and cultivated them as his tenants ; and if they further believe that said Anderson continued to rent out said lands, for every year thereafter, up to the commencement of this suit, and that his said tenants occupied and cultivated said land each of said years ; then the jury must find a verdict for

defendant for said lots Nos. 2 and 6, and for nine-tenths of lot No. 7."

2. " Although the jury may believe that the plaintiffs' testimony shows that a fence was erected around lot No. 2 in the spring of 1878, this would not justify them in finding that the testimony of the witnesses who swore that a fence was erected around said lots the year before was untrue, if they can reconcile that fact with the truthfulness of the defendant's testimony."

3. " The were fact that some witnesses swore that the lots were inclosed in 1878, does not prove that the witnesses who swore they were inclosed the year before, swore falsely. It is the duty of the jury to reconcile the testimony of the witnesses, if it can be done, and not to impute falsehood to any of them ; and, for this purpose, thy should look at the means of the witness for knowing the fact, if such is the fact, that the fence was several times removed during the fall and winter, and restored in the spring, and all the other circumstances in evidence."

4. " If the jury believe, from the evidence, that Anderson rented out the lands as farm lands, and that they were cultivated and planted as such during each of the years they were so rented ; then the mere fact that the tenants, or any other persons, removed or destroyed the fences on one side of said lots, during the latter part of the year, and restored the same in the succeeding spring, can not be held to be an abandonment of his possession, so as to make a break in its continuity, when there is no evidence that, during the time, any other person took possession of said lands."

5. " If the jury believe, from the evidence, that Anderson rented out the said lots more than five years before the commencement of this action, and continued to rent them out each year, claiming them as his own ; and if. they further believe that said tenants, to whom Anderson rented said lots, inclosed and cultivated them during each of said years; then that will constitute such a continuous adverse possession of such lots as is sufficient to bar the plaintiffs' right to recover said lots in this action, although the jury may believe that the fence on one side of the lots was destroyed and removed once or twice during the fall or winter, and was restored during each succeeding spring."

6. " The mere fact, if it be a fact, that the fence on one side of the lots was permitted to be destroyed and removed during each year, but was restored each succeeding spring, will not break the continuity of the adverse possession, if the jury believe that the lands were unimproved, and were used as farming lands, and that a crop was planted on said lands during

[Doe, ex dem. Hughes v. Anderson.]

each of said years, and that they were cultivated as a farm during each of said years.

7. "If the jury believe, from the evidence, that Anderson rented out lot No. 2, more that five years before the commencement of this suit; and that his tenants inclosed said lot, or the greater part of it, and cultivated it; and that he continued to rent it out every year, from that year up to the commencement of this suit; and that his said tenants occupied and cultivated said lot during said years; then that is such a continued possession of said lot as will constitute an adverse possession, and will bar plaintiffs' right to recover said lot, although the jury may believe that the inclosure around the lot was removed every fall or winter, and restored every spring."

The several charges given, and the refusal of the several charges asked, are now assigned as error.

GUNTER & BLAKEY, for the appellants. — (1.) The first charge asked and refused, invoking and applying the principle, *Falsus in uno falsus in omnibus*, asserted a correct proposition, and was justified by the evidence. (2.) One-tenth of lot No. 7 had never been sold for taxes, and the defendant's deeds did not purport to convey it. As to one-tenth interest, there was no disseizin, and the rightful owners were tenants in common with the purchaser at tax-sale. Besides, there was no disclaimer as to this interest, and therefore the defense failed as to the whole lot.—1 Chitty's Pl. 567, 16th Amer. ed. (3.) Several rulings of the court, in the matter of charges given and refused, assert the proposition, that the continuity of an adverse possession is not broken by the destruction of fences in the fall or winter, leaving no visible marks of an actual possession, provided the holder intends to return, and does return and rebuild his fences in the spring. No authority can be found for this proposition, and it is at variance with the whole doctrine of adverse possession, converting a series of distinct trespasses into a continuous possession, and ripening into a title by lapse of time.

TROY, TOMPKINS & LONDON, *contra.*—The defendant's tax-deed was duly executed and recorded, and was at least color of title to the lots described therein. Having taken possession under this deed, and rented out the lands, which were only suitable for farming purposes, the continuity of the possession was not broken by the dilapidated condition in which the fences were suffered to fall when not necessary to protect the crop, if being shown that they were renewed each spring. *Royall v. Lisle*, 15 Geo. 545; *Jones v. Randle*, 68 Ala. 258; *Pugh v. Youngblood*, 69 Ala. 296; *Farley v. Smith*, 39 Ala. 38.

SOMERVILLE, J.—The main point contended for by appellants' counsel arises under charges given and refused by the court, touching the defense of the statute of limitations, and the character of the possession by an adverse occupant of land necessary to make it continuous and uninterrupted.

The defendant is shown to have taken possession of the premises sued for under tax-deeds executed by the probate judge of Montgomery county, in the years 1873 and 1874. This action was commenced in May, 1883.

The period of limitation fixed by statute,·for the recovery of real property sold for the non-payment of taxes, is five years after date of sale.—Code, 1876, § 464. This has been construed to mean five years from the date of the delivery and the recording of the deed, after being properly executed and acknowledged.—Code, § 460 ; *Bolling v. Smith*, at present term ; *Pugh v. Youngblood*, 69 Ala. 296 ; *Lassiter v. Lee*, 68 Ala. 287 ; *Jones v. Randle, Ib.* 258.

There is no contention that the tax-deeds were valid, or such as to have conveyed a good and perfect title to the premises, but they are relied on only to give color of title. That they were admissible for this purpose, is not denied ; for the rule is settled, that a tax-deed, though invalid, may nevertheless constitute color of title, and thus operate to define the boundaries of an actual possession by an occupant.—*Stovall v. Fowler*, 72 Ala. 77 ; *Pugh v. Youngblood, supra.*

It is shown, conceding that this is necessary, that the possession of the defendant was adverse, open, and notorious in its character ; and this would be sufficient to bar the action, provided it was continuous or unbroken for the requisite five years. The premises in controversy were suburban lots, and, at the time defendant purchased them, were open and uninclosed, and without improvements on them.   They were suitable for cultivation, however, and the possession of the defendant was confined to a cultivation by his tenants, who raised crops on the lots annually from year to year.   These tenants constructed an inferior fence around the lots, which seems to have been sufficient for their purposes ; but, during one or more years, it became dilapidated, and was partially destroyed between the time for gathering the crops and the ensuing spring, when it was again renewed.

The proposition involved in the contention of the appellant is, in substance, that the temporary destruction of the fence broke the continuity of the defendant's possession, so as to destroy its adverse character, although there may have been no intention or purpose of abandonment, but an accompanying intention to renew the inclosure when necessity should require it.   In other words, that permitting a fence to be destroyed,

or to get out of repair, for a period of the year when it is not needed to protect the crops, *per se* constitutes abandonment. This is clearly not the law.

A fence or inclosure is not an essential element of adverse possession, but is only one of many acts indicative of possession and claim of ownership. It is often very important, it is true, to mark with precision the limits or boundaries of a possession, especially when the occupant is without color of title, which would answer this purpose. In a section of the country, for example, where fence-laws have been abolished, the absence of an inclosure would weigh but little. So, where a river constitutes a boundary line. The reason is, that it would then be no index of an intention to abandon. It has often been decided in this country, that the possession of an occupant may be adverse without either inclosure or improvements. *Bell v. Denson*, 56 Ala. 444; *Ellicott v. Pearl*, 10 Pet. (U. S.) 441; *Leeper v. Baker*, 68 Mo. 400; Angell on Limitations, § 400; Real Prop. Trials, (Malone) §§ 277–8. And color of title is sometimes said to be a substitute for a substantial and permanent fence around the premises claimed.—Trial of Titles to Land (Sedg. & Wait), § 767; *Watson v. Mancill*, 76 Ala. 600.

As said by this court in *Bell v. Denson, supra*, "the possession must be by acts suitable to the land." In *Clement v. Perry*, 34 Iowa, 564, the settled rule is declared to be, that "where a person claiming land exercises acts of ownership of it, by the use of it for the purposes to which it is adapted," he is in such actual occupancy of it as will bar a recovery after the lapse of the statutory time—that "such possession is as actual as that by inclosure." When land is suitable for farming purposes only, a sufficient actual adverse possession may be obtained by using it for this purpose, openly and notoriously, without break from year to year, although the cultivation be only during the season customary for raising crops. A person must be blind, or else very negligent indeed, who would fail to notice the open cultivation of his land from year to year, the growing of crops upon them, and the gathering and taking of them away, to say nothing of the lasting marks of this industry left permanently behind. *A fortiori* is this true with color of title.

It is plain that, when once an adverse possession has been established, it can be broken only in one of three ways: (1) by the act of the real owner; (2) by the intrusion of a stranger; (3) by the abandonment of the premises by the occupant himself. Whether any act constitute an abandonment, especially if it be equivocal in its nature, is necessarily a question of fact determinable by intention—not a secret or clandestine inten-

tion, but one communicated and made manifest by cotemporaneous circumstances, or subsequent acts. It was on this principle that it was held by the Supreme Court of Missouri, that "every failure to cultivate a field for a season, or a delay in repairing the fence when destroyed, will not be held to be an abandonment, if a sufficient reason appears."—Trial of Titles to Land (S. & W.) §§ 737–744; *Crispen v. Hannavan*, 50 Mo. 550; *Draper v. Short*, 25 Mo. 196.

The charges of the court touching this subject were free from error.

The first charge requested by the appellant was properly refused. It ignored all consideration of the rule, that although a witness may testify corruptly, his testimony should nevertheless be received as credible, so far as it may be satisfactorily corroborated by other evidence.

The second charge was misleading. Conceding that the plaintiff was entitled to recover one-tenth of lot number 7, and that the adverse possession as to this was insufficient, the defense may nevertheless have been good as to the remaining nine-tenths of the lot, included in the defendant's tax-deeds.

We discover no error in any of the rulings of the court, and the judgment is affirmed.