# Normant *v.* Eureka Company.

*Bill in Equity to Perfect, and Quiet Title to Land, and to Enjoin Action of Ejectment.*

1. *Execution of deed presumed from lapse of time.*—Where a purchaser of lands at execution sale enters upon lands purchased, and holds them continuously in his own right for thirty-five years, the law will presume that a deed was executed by the sheriff.

2. *Extent of possession by construction of law.*—The possession of a mere trespasser is confined to the premises actually occupied by him, *possessio pedis*; while the possession of one, claiming under color of title, is co-extensive with the boundaries described by the written instrument under which he holds.

3. *Adverse possession must be open and notorious.*—Mere possession of land is not *prima facie* adverse to the true owner. To have that effect, it must be shown that the adverse holding was known to the true holder, or that such adverse claim was so open and notorious as to raise the presumption of notice.

4. *When purchaser presumed to hold in his own right.*—The possession of land by a purchaser, under a contract of purchase, who has paid all the purchase-money, is presumed to be in his own right, and adverse to the vendor, and, if his possession is continuous for the statutory period of ten years, the right of action to recover possession is barred.

| 98 | 181 |
| 104 | 631 |

| 98 | 181 |
| 106 | 265 |
| 106 | 322 |
| 107 | 608 |
| 108 | 562 |
| 108 | 571 |

| 98 | 181 |
| 115 | 460 |

| 98 | 181 |
| 116 | 572 |

| 98 | 181 |
| 122 | 372 |

| 98 | 181 |
| 123 | 132 |
| 123 | 135 |
| 125 | 305 |

| 98 | 181 |
| 141 | 458 |

| 98 | 181 |
| 143 | 270 |
| 143 | 272 |
| 143 | 458 |

| 98 | 181 |
| 144 | 528 |

[Normant v. Eureka Company.]

5. *Defendant in execution can not dispute purchaser's title.*—The general rule is that when lands have been sold under execution, the defendant in execution, when sued by the purchaser for possession, can not dispute the plaintiff's title, the purchaser in such case comes into exactly such estate as the debtor had.

6. *Contract of sale fixes extent of possession under it*—A valid contract of sale of land, though not in writing, fixes the extent of the possession of one entering and holding under it, just as the possession of one who is in under color of title, is limited by the description in the writings which confer color of title.

7. *Fence, or cultivation not essential elements of adverse possession.* Neither a fence or enclosure, nor cultivation, is an essential element of adverse possession, when the acts of ownership are such as those to which the land is adapted, and the occupancy and use are continuous exclusive and hostile to the claims of others.

8. *How adverse possession broken*—Adverse possession once established can be broken only in one of three ways: 1. By the act of the real owner. 2. By the intrusion of a stranger. 3. By the abandonment of the premises by the occupant.

9. *Title by adverse possession destructive of legal title*—Adverse possession, held until the claim and title have ripened into a fee, necessarily destroys all outstanding legal titles. There can not be an absolute fee simple title to the whole land in each of two adverse claimants at the same time.

10. *When person in possession may have his title perfected*—A person in possession of land having a perfect equity without the legal title, may come into a court of equity and enforce a specific performance, and have his title perfected, whether or not there is a pending suit involving his title. Or, if in possession with a fee title by adverse possession, but without written evidence of it, there being no suit against him involving his title or possession, may come into equity for relief.

11. *Notice of adverse possession.*—The vendor of land if charged with notice of the adverse possession of his vendee who has gone into possession and paid all the purchase-money; on the same principle the defendant in execution is charged with notice of the adverse holding by the purchaser of lands at execution sale—on a judgment recovered on personal service, and after legal advertisement and payment of the purchase-money.

12. *Adequate remedy at law.*—A bill filed to remove a cloud, or perfect complainant's title, which shows that there was, at the time it was filed, a suit at law for the recovery of the land, in which complainant's legal title might be tested and established, is without equity.

APPEAL from Birmingham City Court.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed in the City Court, sitting in equity, by the Eureka Company, and Wm. A. Walker and Joseph P. Mudd, as executors and trustees of the estate of Wm. S. Mudd, deceased, against Joseph S. Smith, sheriff of Jefferson county, James W. Normant and the other heirs-at-law of James M. Normant, deceased, seeking to enjoin an action of ejectment then being prosecuted by the defendants in the Circuit Court of Jefferson county, to recover possession of cer-

[Normant v. Eureka Company.]

tain lands described in the bill; to divest out of said plaintiffs in the ejectment suit, the legal title thereto, and to quiet the possession of the complainants. The bill was demurred to by the defendants, and a motion was made to dismiss the bill for want of equity, and to dissolve the injunction that had been granted. The demurrer was overruled, and motions denied. From this action of the court this appeal is taken.

ARNOLD & EVANS, for appellants.—Upon the facts and assignments, we submit that the bill shows that the legal title to the lands is in appellants, and that nothing has occurred to divest them or their ancestor of it, or to bar or preclude them from asserting it. Lapse of time, however great, does not bar them as the true owners, unless there has been such continued and connected adverse possession as perfects title under the statute of limitations.—*Ross v. Goodwin*, 88 Ala. 390; *Woodstock Co. v. Roberts*, 87 Id. 436, 439, 441. All presumptions and intendments are indulged in favor of the true owner, and his failure to object to trespass on his land, or to others paying taxes on the same, even where he has, or is chargeable with notice of such acts, is not such acquiescence as will estop him from asserting his title. *Dothard v. Denson*, 72 Ala. 541; *Ross v. Goodwin*, 88 Ala. 390; *Alexander v. Savage*, 90 Id. 383; Am. & Eng. Ency. 13 and 14, notes. Mere possession is not *prima facie*, adverse to the true owner. The *intention* determines the character of acts and possession.—*Humes v. Burnstien*, 72 Ala. 546, 556.

The payment of taxes without actual occupancy of the lands, did not confer title or adverse possession.—1 Am. & Eng. Encyc. 261, 304, and notes; *Green v. Jordan*, 83 Ala. 220; *L. & N. R. R. v. Philyaw*, 88 Ala. 264.

And, occasional and disconnected acts of cutting wood from the lands, did not amount to actual possession or notice. *Childers v. Calloway*, 76 Ala. 127; *Alexander v. Savage*, 90 Ala. 383.

2. Under the second, third and fourth grounds, relied on here by appellants, the jurisdiction of equity in the case made by the bill, is challenged. It is admitted, that in the absence of statute on the subject, equity would have jurisdiction in such case.—Freeman on Executions, §§ 326, 327; *McCall v. White*, 73 Ala. 562.

But we have a statute on the subject—Sec. 2916 of the Code—providing a special remedy in such case, in the court from which the writ is issued. The bill shows that the writ under which the sale was made by the sheriff, issued from a

. [Normant v. Eureka Company.]

court of law, and we submit that the remedy was at law, and exclusively in that court. But if the statutory remedy is not exclusive, it was necessary to invoke the remedy in whatever forum it existed, within a reasonable time after the sale was made by the sheriff. More than ten years of unexplained delay after such sale, it has been held by this court, would not be a reasonable time in a court of law.—*McCall v. White*, 73 Ala. 562; *McCaskell v. Lee*, 39 Ala. 131; *Daniel v. Modawell*, 22 Ala. 365.

3. The bill shows no such adverse possession as to entitle appellees to any right by reason thereof.—1 Am. & Eng. Ency. 278 and notes. Possession without color of title, is limited to actual occupancy. It is not shown what part of the land was occupied or used. Cutting timber from wild lands, unfit for any other use, under color of title, may amount to disseizin, but occasional acts of such cutting, do not, *per se*, constitute adverse possession.—*Farley v. Smith*, 39 Ala. 38; *Rivers v. Thompson*, 46 Ala. 335; *Childers v. Galloway*, 76 Ala. 128; *Burks v. Mitchell*, 78 Ala. 61.

4. The bill sets out no facts to excuse or justify the long delay of appellants in seeking relief. Mere general or inferential averments, do not relieve, from the consequence of such delay.—*James v. James*, 55 Ala. 523, 534; *Phillipi v. Phillipi*, 61 Ala. 41.

5. The bill shows that the claim and equity of appellees is stale and barred by the statute of limitation of ten years, and the rules of equity against stale demands, and this defense may be made both by motion to dismiss, or by demurrer.—*Espy v. Connor*, 76 Ala. 501; *Greenless v. Greenless*, 62 Ala. 330; *Thomson v. Parker*, 63 Ala. 367; *Scruggs v. Decatur Co.*, 86 Ala. 330. Twenty years delay, from the time legal proceedings might have been instituted without any excuse or explanation on part of appellees, or without recognition or admission of liability on part of appellants, is a bar to the relief prayed for, or to any relief in the case. *McCarthy v. Carrie*, 32 Ala. 75; *Harrison v. Heflin*, 54 Ala. 552; *Goodwin v. Baldwin*, 59 Ala. 127; *Hernld v. Weaver*, 72 Ala. 373; *McCarthy v. McCarthy*, 74 Ala. 546; *Solomon v. Solomon*, 81 Ala. 505; *Bozeman v. Bozeman*, 82 Ala. 389; *Scruggs v. Decatur Co.*, 86 Ala. 173; *Woodstock Co. v. Roberts*, 87 Ala. 436; *Lowery v. Davis*, 8 So. R. 79; *Semple v. Glenn*, 9 Id. 265.

In *Bozeman v. Bozeman, supra*, it was said by this court, "that we have in this State, by a long series of decisions, established the rule, that the lapse of twenty years will operate as a positive bar to the enforcement of every char-

[Normant v. Eureka Company.]

acter of legal rights in the courts of this State, unless there has been, in that period of time, a recognition or admission of some material fact on which the right in question may be adjudged to rest, and which, therefore, keeps it alive and in force.

HEWITT, WALKER & PORTER, for appellees, cited: Code, § 2916; *Stewart v. Stokes*, 33 Ala. 494; *McCall v. White*, 73 Ala. 563; *Cowan v. Sapp*, 74 Ala. 44; *Scruggs v. Decatur Land Co.*, 86 Ala. 177; *Shorter v. Smith*, 56 Ala. 208; *Harold v. Weaver*, 72 Ala. 373; *Echols v. Hubbard*, 90 Ala. 309.

COLEMAN, J.—On the 13th day of May, 1890, James W. Normant, *et al.*, instituted the action of ejectment in a court of law against appellees to recover a certain tract of land. The complainants thereupon filed the present bill in the equity court, to enjoin the prosecution of the ejectment suit, and also to have the legal title divested out of the plaintiffs in the ejectment suit, and to quiet the possession of the complainant.

The averments of the bill show that the plaintiffs in the ejectment suit are the heirs of James W. Normant who died in May, 1881, and from him derive title. The bill further shows that on the 3rd day of September, 1855, James W. Normant was siezed and possessed of the lands in controversy, that prior to that time, to-wit, on the 19th day of March, 1855, suit in the Circuit Court was instituted by Joseph R. Smith and others against James W. Normant and on the same day a copy of the summons and complaint was regularly served upon the defendant in person, and at the August term of the court, after service, recovered a judgment against him. An execution issued upon the judgment and was placed in the hands of the sheriff on the 3rd day of September and by him levied upon the lands in controversy, on the 2d of November, and after legal advertisement and notice, the lands were "regularly sold by the sheriff by virtue of said execution on the 3d day of December, 1855." At the sheriff's sale one Hawkins bought the lands which lie in section twenty-nine, and one Bagley and James A. Mudd purchased the lands which lie in section thirty-two. The present complainants claim by mesne conveyances duly executed from the purchasers at sheriff's sale. The claims of the complainants, through paper titles, began the latter part of the year 1872.

The bill avers that the price paid at sheriff's sale was a

[Normant v. Eureka Company.]

fair equivalent for the value of the land, that it was paid to the sheriff, and credited upon the judgment. The bill avers that from some cause the sheriff failed and neglected to execute deeds to said purchasers, that said Hudson (the then sheriff) has long since been dead, and that Joseph S. Smith is his successor in the office of sheriff. The bill avers that from the date of the sheriff's sale to the filing of the bill, the complainants, and those from whom they claim, have paid the taxes on the land, and that "neither Normant nor defendants ever asserted any claim to said lands until the 13th of May, 1890, when the defendants filed an action in ejectment."

The only averments as to the possession of the land by complainants and those from whom they derive title is in the 10th paragraph of the bill, and is in the following words : " Orators show that the lands hereinbefore described were, at the time of said sale, and still are woodlands ; that the soil thereof is poor, and almost entirely unsusceptible of cultivation ; that at the time of the sheriff's sale aforesaid, and for years afterwards, said lands were valuable only for the firewood which could be cut therefrom, and complainants aver that such use was made of the land by the purchasers at the sheriff's sale, and their successors, for several years, that when the lands passed partly into the hands of the Red Mountain Iron & Coal Company, they were used for obtaining wood to make charcoal for said Iron Co. That since then a saw-mill was operated on said land for several years under a lease from complainants, and that complainants are now in possession." It is also averred, as we have stated, that complainants and those from whom they derive their title, have paid their taxes on the land since the purchase at the sheriff's sale. These are the only averments in the bill to show possession of the purchasers at sheriff's sale, and their sub-purchasers. It is not averred that the acts of cutting fire-wood, making charcoal, the lease for the purpose of a saw-mill, &c., or the payment of taxes were made or done under a claim of right. Pleading must be construed most strongly against the pleader. The averment that these acts were performed for "several years" is very indefinite. It is possible, under this averment, that no acts of ownership were exercised until after the expiration of ten years from the time of the purchase at sheriff's sale. The averment is entirely inconsistent with a total abandonment of rights acquired by the purchase at sheriff's sale, for a period of more than ten years after such purchase. We will endeavor to declare some principles of law, which appear to

be applicable to the facts of this case, and which may serve as a guide in its future litigation.

From the date of the sheriff's sale to the beginning of the action in ejectment, the length of time was about thirty-five years. If the purchasers took possession of the land under their purchase, and held it continuously during that time in their own right under the purchase, the law would presume that a deed was executed by the sheriff. This conclusion results, necessarily, from the rule of law which prevails in this State.—*McArthur v. Carrie*, 32 Ala. 76 ; *Wilson v. Holt*, 83 Ala. 540. The presumption of law in the present case is overcome by the positive averment of the bill, that no deed was ever executed by the sheriff, and which averment on demurrer must be regarded as true against the pleader.

An important enquiry is as to the extent and character of the possession of the purchasers at sheriff's sale, if, in fact, they entered into possession of the land under their purchase. It is the law that the possession of a mere trespasser is confined to the premises actually occupied by him—*"possessio pedis"* limits the extent of his adverse holding. It is also settled that the possession of one claiming under color of title, is co-extensive with the boundaries described by the written instrument under which he claims and holds.—*Lucy v. Tenn. & Coosa R. R. Co.*, 92 Ala. 246 ; *Burks v. Mitchell*, 78 Ala. 63 ; *Childress v. Calloway*, 76 Ala. 133 ; *Stovall v. Fowler*, 72 Ala. 78.

It is further settled that mere possession of land is not *prima facie* adverse to the title of the true owner. To have this effect it must be shown that the true owner knew that the adverse holder claimed in his own right, or it must be so open and notorious as to raise the presumption of notice. *Robinson v. Allison*, 97 Ala. 596 ; *Dothard v. Denson*, 72 Ala. 544 ; *Lucy v. Tenn. & Coosa R. R. Co.*, 90 Ala. *supra*.

The purchasers in the present case at sheriff's sale obtained no paper title or instrument to mark the boundary of their purchase and possession. Possession by them under their purchase at sheriff's sale, having paid the purchase money, would not be that of trespassers. Under the averments of the bill, the purchasers had a perfect equity to the land, and had the right to compel a conveyance to them of the legal title. The statute of frauds, expressly excepts from its operation, contracts for the sale of land, where the purchaser pays in part or in whole the purchase money, and is let into possession under his purchase.

In the case of *Ridgeway v. Holliday*, 59 Mo. 444, the rule is thus declared : "Where one buys land, pays the purchase

[Normant v. Eureka Company.]

money therefor, and enters into possession thereof, with an agreement (verbal agreement as the facts show), that a deed shall be made, there being no contingency upon the occurrence of which he is to surrender the possession to his vendor, the transaction is not an agreement to purchase, it is a sale. The contract is executed on the part of the vendee, and he does not hold under his vendor, but adversely to him." "It is not the case of a vendee holding under a bond for title, or other executory contract of purchase; where some act remains to be performed by the vendee before he can demand the legal title."

The possession of land by a purchaser under a contract of purchase who has paid all the purchase money in law is presumed to hold in his own right and his possession, after payment of the purchase money is adversely to his vendor. The law does not require of him further notice to his vendor that he holds adversely, and if his possession is continuous for the statutory period, without some recognition of, or subordination to the legal estate of the vendor, the right of entry or of action to recover possession is barred. This is the accepted rule of law in this State.—*Potts v. Coleman*, 67 Ala. 226; *Tayloe v. Dugger*, 66 Ala. 446; *State v. Conner*, 69 Ala. 212; *Beard v. Ryan*, 78 Ala. 43; *Newsome v. Snow*, 91 Ala. 641.

"The general rule is that when lands have been sold under execution, the defendant in execution, when sued by the purchaser for possession, can not dispute the plaintiff's title. The doctrine of all the cases on this point is, that the purchaser comes into exactly such estate as the debtor had,—Newell on Ejectment, 711; *Read Hayes v. Bernard*, 38 Ill. 297; *Ferguson v. Miles*, 3 Gilman, (Ill.) 358; *Sherry v. Denn*, 8 Blackf. (Ind.) 552; *Jackson v. Graham*, 3 Caines Rep. N. Y. 188.

We are clearly of the opinion that a purchaser who pays the purchase money for land and takes possession of it under a legal contract of sale, whether verbal or written, has possession coextensive with the lands included in his contract of purchase, and he may show the extent of his possession by proof of the contract of sale and purchase, that in such a case the contract will fix the boundary of his possession. This principle applies as between vendor and vendee, or in case of execution sale, to the defendant in execution and the purchaser at such sale. It is not intended to modify or effect, in any way, the doctrine declared in the above authorities as to the possession of mere trespassers, or, those who claim under color of title, but, simply to declare that a

valid contract of sale of land, fixes the extent of the possession of one entering upon, and holding possession under such a contract, just as the possession of one who is under color of title is limited by the description in the writings which confer color of title.

"Possession may be shown by acts suitable to the character of the land." "A fence or enclosure is not an essential element of adverse possession, but is only one of many acts indicative of possession and claim of ownership." And we may add, cultivation is not an essential element of adverse possession, when the acts of ownership are such as those to which the land is adapted, and such occupancy and use are continuous, exclusive and hostile to the claims of others, and intended to be such.—*Bell v. Denson*, 56 Ala. 449; *Hughes v. Anderson*, 79 Ala. 215; Newell on Ejectment, p. 725; *Sauers v. Giddings*, 51 N. W. Rep. 265. The payment of taxes is to be taken into consideration with the other facts and circumstances. Possession under a claim of right is a question of fact, the existence of which is to be determined by the conduct, acts of ownership exercised over the land, and declarations of the party in possession.

"Adverse possession once established can be broken only in one of three ways: 1. By the act of the real owner; 2, by the intrusion of a stranger; 3, by the abandonment of the premises by the occupant himself."—*Hughes v. Anderson*, 79 Ala. 215.

"Unknown intrusion of strangers will not interrupt the continuity of possession unless continued for such length of time as to become assertion of right."—*Bell v. Denson*, 56 Ala. 449. And if such intrusions are known and not submitted to, or acquiesced in, but are forthwith remedied by recourse to legal redress, they will not amount to an interruption of the continuity of possession.

Adverse possession held until the claim and title has ripened into a fee, necessarily destroys all outstanding legal titles. There can not be an absolute fee simple title to the whole land in each of two adverse claimants at the same time. If therefore complainants went into possession under their purchase, and held adversely for a period sufficient to perfect their title into a fee, there can be no legal title in the complainants unless they have acquired title by a subsequent possession and adverse holding for the statutory period. The averments of the bill exclude the consideration of any title thus acquired by respondent. Notwithstanding a fee title may be acquired by adverse possession, there may be a cloud on such title, inasmuch as the record

[Normant v. Eureka Company.]

of titles or written evidence of title may tend to show a legal title outstanding in another, which might lead to litigation or depreciate the value of the property.

A person in possession of land having a perfect equity without having acquired the legal title, may come into a court of equity and enforce a specific performance, and have his title perfected, whether or not there be a pending suit involving his right and title. If sued in ejectment, having a perfect equity, and not a legal title, he may enjoin the prosecution of the suit by bill, and a court of equity having jurisdiction to protect his equity, and to invest him with the legal title may retain the bill upon proper averments, and do complete justice between the parties, to the extent of settling the entire litigation.—*Shipman v. Furniss*, 69 Ala. 555. See for a discussion of the question *Whittock v. Johnson*, 12 S. E. Rep. 614.

We hold further that a person in possession of land, who has a fee title acquired by an adverse possession, but without written evidence of it, or a judgment at law, or decree of a court establishing his title, there being no suit against him involving his right of possession, or the validity of his title, may come into a court of equity for relief.

In *Echols v. Hubbard*, 90 Ala. p. 319, the court uses this language: "If a link in the chain of title is lost, or the description in any link of the chain of title is lost, or the description in any link of that chain is so indefinite and indeterminable as to require a resort to evidence *aliunde* to identify the land really conveyed, the deed from Pope, administrator, to Patton, is a cloud on her title, 'which would embarrass alienation, is calculated to engender a sense of insecurity, and may be the source of unfounded or vexatious litigation,' and which a court of equity will remove while the evidence necessary to establish the real boundaries is yet at hand.

In the latter aspect where adverse possession is relied on by the complainant, which is the case we find in this record, the right of necessity must be effectuated by extraneous evidence, and equity may always be invoked, in the absence of a legal remedy, to quiet a title thus resting in parol. See *Marston v. Rowe*, 39 Ala. 722, and other authorities to the proposition cited in the opinion.

But as was said in *Jones v. De Graffenreid*, 60 Ala. 151, "The principle on which equity intervenes to remove a cloud, or impending cloud from the title, is that the party, being in possession, can not bring an action at law to establish his title or to test its strength; and it is unreasonable

that he shall be required to stand in suspense until it suits the interest or caprice of his adversary to bring suit; his title in the meantime resting under distrust, while he is at all times liable to lose the benefit of important evidence by the death of witnesses. See also *Rea v. Longstreet*, 54 Ala. 291; 3 Brick. Dig. 355, § 345; *Echols v. Hubbard*, 90 Ala. 311.

It is urged as a ground of objection to the equity of the bill that the statute affords a complete remedy in a court of law. The rule in such cases is this: If the equitable right and remedy existed prior to the adoption of the act embodied in § 2916 of the Code, the statutory remedy therein furnished would not destroy the equitable remedy, unless the language of the statute limited the remedy to the one therein provided.—*Jackson v. Jackson*, 91 Ala. 292.

The remedy invoked in this case, not being under the statute, but the equitable remedy which exists independent of the statute, the present sheriff was not a necessary or proper party. The Chancery Court may appoint its register or other proper person to execute a conveyance, when the relief is granted, or its own decree is sufficient to divest or invest the legal title.—*Jones v. Woodstock Iron Co.*, 95 Ala. 551.

We further declare the law to be that a purchaser of land who takes possession, having paid all the purchase money, holds adversely to his vendor, and in such case the vendor is charged with notice of the adverse holding. A purchaser in possession of land bought at execution sale issued upon a judgment recovered on personal service and after legal advertisement, having paid the purchase money, holds adversely to the defendant in execution, and the defendant in execution upon the same principle is charged with notice that such possession is adverse. We can perceive no valid reason for holding a different rule in the case of a defendant in execution and purchaser at execution sale in such cases, and a vendor and vendee.

The averments of the bill show that there was at the time of the filing of the bill, a suit pending for the recovery of the land in a court of law, and by which complainants' legal title might be tested and established by the judgment of a court of law. Under the principles we here declared there is no equity in the bill, so far as it seeks to remove a cloud or perfect a chain of title.

The averments of the bill and the relation of the parties to each other, do not admit of its consideration as a bill for specific performance against the heirs of Normant; and if it

could be regarded as such a bill, inasmuch as it seeks affirmative relief, the delay of thirty-five years before asserting the right is sufficient to stamp it as a stale demand.

Our conclusion is that the court erred in overruling the demurrer to the bill, and in denying the motion to dissolve the injunction. The case is reversed and remanded that complainants may have an opportunity to amend their bill if they can so as to give it equity, or take such orders as they may be advised in the premises.

Reversed and remanded.

