# Clemmons, *et al. v.* Cox, *et al.*

*Bill in Equity to Establish Title and to Compel Conveyance.*

1. *Vendor and purchaser ; rights of vendee after payment of purchase money and acquiring possession ; presumption as to title.*—Where, at the time of the purchase of land and the payment of the purchase money and acquiring possession under such purchase, the legal title to said land is in a third party to whom the vendor had, a short time before, conveyed it, but who never paid any consideration therefor, after the lapse of thirty years, during which time the vendee had been in possession, exercising acts of ownership and asserting hostile title thereto, it will be presumed that said third person conveyed the land, to the vendee, and that the legal title had become invested in him, and, as against such title of the vendee, a quit-claim deed executed by the vendor, or a deed conveying the vendor's interest executed by a sheriff, after the lapse of thirty years, is of no avail ; and the vendee and those claiming under him are entitled to have the quit-claim deed set aside and annulled and to have a deed executed to him or them conveying the lands of which he or they hold the title.

APPEAL from the Chancery Court of Geneva.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellants against the appellees. The facts of the case are substantially the same as set out in the report of the case on the former appeal (114 Ala. 350) ; and special reference is here made to the facts as therein stated.

The prayer of the bill was that the title to the land described in the bill be vested in complainants ; that Chalker be required to execute a deed of conveyance to them ; that the quit-claim deed from Chalker to Cox, and the sheriff's deed to Morris, conveying said lands, be set aside and annulled ; that a reference be had to ascertain the amount of the rents, incomes and profits derived from said lands of Cox and Morris, and the value of the timber cut, sold and wasted ; that an injunction be issued restraining Cox and Morris from further cutting, wasting, removing or selling any timber from said lands, and for general relief.

Upon the final submission of the cause, upon the pleadings and proof, the chancellor decreed that the complainants were not entitled to the relief prayed for, and ordered the bill dismissed. From this decree the complainants appeal, and assign the rendition thereof as error.

CARMICHAEL & THACH, for appellant.—1. Complainants do not ask a literal and exact performance of the contract, but only a substantial performance that will do justice to all parties.—22 Amer. & Eng. Encyc. of Law, 909 ; Waterman on Specific Performances, § 128. In order to decree substantial performance equity will construe the contract, will ascertain the real intention of the parties, and will carry such intention into effect. *Irwin v. Bailey,* 72 Ala. 467 ; *Moon v. Crowder,* 72 Ala. 79 ; *Thornburgh v. Fish,* 11 Montana 53 ; 2 Washburn on Real Property, 476.

2. Such being the case, the defendants can not, by resisting the bill and in effect thereby asking for a rescission of the contract between Chalker and Clemmons, defeat the bill, unless they offer to return the consideration paid by Clemmons. The answer of the two respondents, Cox and Morris, does not offer, in any way, to restore the *status quo* of the contracting parties.

[Clemmons, *et al.* v. Cox, *et al.*]

Surely they can not retain both tracts of land.—*Mialhi v. Lassabe*, 4 Ala. 713 ; 21 Amer. & Eng. Encyc. of Law, 85 ; *Grider v. Mortgage Co.*, 99 Ala. 281 ; *N. E. M. Sec. Co. v. Powell*, 97 Ala. 483 ; *Ellis v. Ellis*, 84 Ala. 348.

M. E. MILLIGAN, *contra.*—1. Chancery will not decree specific performance, where the vendor has no title. *Fitzpatrick v. Featherstone*, 3 Ala. 40 ; *Harrison v. Deramus*, 33 Ala. 463 ; Adams Equity, pp. 80, 81, 86. This is particularly true in cases where the purchaser, at the time of making his purchase, had knowledge of his vendor's want of title.—*Knox v. Spratt*, 6 So. Rep. (Fla.) 924 ; Amer. Dig. (1892), p. 4759, § 55 ; p. 4766, § 96 ; 5 Wait's Act. & Def., p. 780.

2. Appellee was not estopped to set up an outstanding title.—*King v. Stevens*, 18 Ala. 475 ; *Clements v. Pearce*, 63 Ala. 284 ; *Snedecor v. Freeman*, 71 Ala. 140 ; *Guilmartin v. Wood*, 76 Ala. 204.

HARALSON, J.—The facts of the case, as made by the bill, are fully set out in the report of the same on a former appeal—114 Ala. 350—to which reference is made, and need not be repeated in full.

Under the facts stated in the bill, as we held before, the complainants own the equitable title to the lands in suit, and neither of the defendants, nor all of them together, have any right or title to the same, which is not subordinate to the superior equities of the complainants.

On the trial of the case on pleadings and proofs, nothing has been brought to light, which changes the legal relations of the parties as declared in our former opinion. The complainants' ancestor paid the full purchase price for the lands and was put in possession of them by his vendor, and complainants, as his children, are the owners of the equitable title to the same, as against their ancestor's vendor, the said Chalker, and the defendants, Cox and Morris, who claim under him. Cox and Morris acquired and could claim under Chalker no greater rights than he had.

The bill was taken as confessed against Chalker. He was examined as a witness by both sides. He testified : "I owned said lands at one time. I exchanged lands with John M. Clemmons in about 1859. Clemmons made

me a deed to the lands described in paragraph four of
the original bill, and I put him in possession of the lands
described in paragraph three of the original bill, that
being what I agreed to do. I sold the lands described
in section three of the original bill to one Parker, about
two months before I exchanged lands with Clemmons, and
made him a deed. Parker paid no part of the purchase
money. Parker did not take possession of the land.
He gave me a note for said land, for $1,250, which I
turned over to Clemmons at the time of the exchange.   *
*   *   *   I afterwards heard that Parker's real name
was not Parker, but Pickett.   *   *   *   I remained in
possession of said land until I put Clemmons in posses-
sion. Clemmons said he would trade if I would put him
in possession and give him Parker's notes ; that he could
get a title in the chancery court.   *   *   *   Clemmons
paid me in full for all the right, title, and interest I
claimed in and to said lands described in paragraph
three of the original bill. At the time I traded with
John M. Clemmons I delivered the Parker note to him,
and thereupon put him in possession of the lands.   *   *
*   Since that time I have never claimed any interest in
the said lands, and did not claim any at the time I exe-
cuted a quit-claim deed to Henry B. Cox. I made Cox
a quit-claim deed to said lands in about 1892, and told
him about the trade with John M. Clemmons. It is a
fact that I informed H. B. Cox that I neither had nor
claimed any right, title or interest in the said lands at
the time I executed the quit-claim deed to him.''

He further testified, that he had not seen or heard of
Parker, who professed to live in Georgia, since he exe-
cuted said deed to him in 1859 or 1860 ; that Parker has
never paid any part of the purchase money, and has
never made any claim upon him, Chalker, for the land ;
that the reason he did not make Clemmons a deed to the
land he sold him was that he had already deeded the
land away and could not make him a deed ; that Clem-
mons afterwards requested him to make him a deed,
which he declined to do unless Clemmons would get back
the deed he, Chalker, had made to Parker, which deed
Clemmons said he had procured, but had afterwards lost.
He also further testified, that at the time he executed
the quit-claim deed to Cox (who had been to see him
two or three times to induce him to give it), he told him

[Clemmons, *et al.* v. Cox, *et al.*]

he did not want to give him a deed, but Cox said it made no difference, that anybody could make a quit-claim deed to any land; that Cox never paid him anything for said quit-claim, but about a year afterwards, when he took possession of the land, he sent him, Chalker, two dollars, and that was the entire sum paid by him as a consideration for said deed.

From the foregoing it appears that Clemmons, in 1859 or 1860, bought and paid full consideration for said land from Chalker, and was at the time put in possession by and held under him; that complainants, as the only children and heirs of said Clemmons, acquired and own the entire interest of said Chalker in and to said land; that Chalker had a short time previously, executed a deed to said land to one Parker, a non-resident, whose given name nowhere appears; that Parker, so called, never went into the possession of said land, and never paid any part of the purchase money therefor, and has never been seen or heard of since; that Chalker continued to reside on said land after that until he sold them to Clemmons and put him in possession; that in 1892 the defendant, H. B. Cox, desiring to take possession of said land,—which the evidence tends to show were outlying woodland, valuable for the pine timbers thereon, —and desiring to procure from Chalker a quit-claim deed to the land, as a colorable foundation for setting up a claim to it, interceded with Chalker, who was of advanced age, to give him such a deed, on the assurance that it was an innocent, unhurtful thing to do, since anybody could give a quit-claim to any land; that Chalker fully informed him of the complainants' rights in and to said lands, and declined, at first, to quit-claim to him, but afterwards, yielding to Cox's importunities, did execute to him a quit-claim, without any consideration, except the nominal sum of two dollars, long afterwards paid, and that, upon such a claim of right and title, said Cox took possession of said lands, claiming to own them; and he and Morris, who acquired nothing more than Cox's interest, which was nothing, have been cutting and appropriating the timbers thereon. Under this claim, as the result of the trade and exchange of lands between Chalker and Clemmons, fairly made between them, Chalker acquired, took possession of and owns Clemmons' lands which were deeded

[Clemmons, *et al.* v. Cox, *et al.*]

to him by Clemmons, and acquired also, if Cox and Morris' claim is to prevail, all of the lands which Chalker gave Clemmons in exchange for his; so that Cox and Morris under their quit-claims, the one from Chalker and the other from the sheriff, on sale of Cox's interest under execution, get both parcels of land, and Clemmons and his heirs get nothing. This is not right, and an equity court is competent and will thwart such a fraudulent consummation.

The deed to Parker is no obstacle to a proper decree in the case. Complainants own the equitable title. We will presume if necessary to sustain their equitable title, that after so long a lapse of years—over thirty—Parker conveyed the lands to complainants' ancestor, the said J. M. Clemmons, deceased, and that the legal title became invested in him. Almost any reasonable presumption will be indulged to sustain complainants' title to the land. Certainly Parker could not now make his title available against them.—*McArthur v. Carrie*, 32 Ala. 76; *Wilson v. Holt*, 83 Ala. 540; *Long v. Palmer*, 81 Ala. 384; *Norment v. Eureka Co.*, 98 Ala. 187; 1 Greenl. Ev., § 46; Stephens' Dig. Law of Ev., 187; 1 Jones Law of Ev., §§ 75, 76.

While there is some variance between the allegations and proof, there is a sufficient correspondence therein, to sustain the real and substantial equities of the case made.

We must reverse the decree of the court below and here render such decree as the court below should have rendered.

It is therefore ordered, adjudged and decreed that all the right, title and interest of the defendants, John P. Chalker, Henry B. Cox and D. A. Morris, in and to the lands described in section three of the bill, to-wit, the south half of the northwest quarter, and the southwest quarter of the northeast quarter, and the east half of the southwest quarter, and the southeast quarter and the northwest quarter of the northeast quarter, and fractions A and B, all in section nine, township two, range twenty-three, formerly in Dale, but now in Geneva county, Alabama, be and the same are hereby divested out of them, and invested in the complainants to this suit, viz., James M. Clemmons, Archibald Clemmons,

[Dean, *et al.* v. Witherington.]

John J. Clemmons, W. F. Clemmons and Mary E. Fulford, wife of Daniel L. Fulford.

It is further ordered, adjudged and decreed, that the quit claim deed of the said John P. Chalker to the said Henry B. Cox, and the deed of the sheriff, B. F. Pate, to the said D. A. Morris to said lands be, and they are, each, hereby set aside, cancelled and annulled ; that said Henry B. Cox and the said D. A. Morris are, each, hereby ordered forthwith to deliver to the register of the chancery court of said county of Geneva, said deeds ; that the said register shall write in ink upon, or on the face of each of said deeds, that the same is set aside, cancelled and annulled, by order and decree of this court, rendered on the 15th day of December, 1897, in the cause therein pending between said John M. Clemmons *et al.* v. said Henry B. Cox *et al.*, and sign his name officially thereto, and file said deeds, so cancelled and annulled, with the papers in this cause in said chancery court, and that, if said deeds have been recorded in the office of the probate court of said county, to write on the margin of the record of the same, the same certificate of cancellation, and sign his name officially thereto.

It is further ordered and decreed that the register of said court, proceed without unnecessary delay under the rules of practice in said court, to execute the reference prayed for in the fifth (5) section of the prayer to said bill, and report his findings to the next ensuing term thereafter of said court for its decree thereon, and for the purpose of the execution of this reference, this cause is remanded to the lower court.

The appellees will pay the costs of the appeal in this court and in the court below.

Reversed, rendered in part and remanded in part.