# Doe *ex dem.* Alabama State Land Co. v. Beck.

## *Ejectment.*

1. *Pre-emptor; definition and rights of.*—A pre-emptor is one who by settlement and improvement of public land, acquires the right to purchase the same in preference to others by paying the minimum price thereof, provided it is, or when it becomes open to sale. The United States do not enter into any contract with the settler, or incur any obligation that the land occupied by him shall ever be put up for sale.

2. *Adverse possession.*—The possession of a pre-emptor is lacking in the element of claim of ownership and title against all the world essential in the constitution of an adverse possession which, if continued for ten years, will itself ripen into title.

3. *Same; act regulating adverse possession.*—If a party's adverse possession had ripened into a perfect title before the enactment regulating adverse possession, (Acts 1892-93 p. 478) the law existing prior thereto is the law of the case.

4. *Evidence of what was meant by a witness in use of words.*—A witness having in his testimony, used the words "pre-emption lands," it would have been proper to have asked him what he understood thereby, but it is improper to show the understanding of another witness, or the general understanding of the phrase.

APPEAL from Cherokee Circuit Court.

Tried before Hon. JOHN A. BILBRO.

The facts upon which this case was tried, and the objections to the rulings of the court upon the admission of evidence, are shown by the opinion.

At the request of the defendant the Court gave the following written charges to the jury, to each of which the plaintiff excepted :

No. 5. "The Court charges the jury that if Hale held under a pre-emption claim and Beck bought and went into possession under him, and claimed under that pre-emption

claim, and held adverse possession under such pre-emption claim for ten years before the bringing of this suit openly, notoriously and continuously, then plaintiff cannot recover the lands claimed."

No. 6. "The Court charges the jury that if Beck held open, notorious, continuous adverse possession of the lands sued for against plaintiffs in this suit for ten years before the bringing of this suit, the plaintiff cannot recover, although he may believe the legal title to have been, or may have been, in the government."

No. 7. "The Court charges the jury that if Beck has proven to the reasonable satisfaction of the jury that he had been in the open, notorious and continuous adverse possession of the lands sued for, for ten years, before the bringing of this suit, the jury will find for the defendant.

There was a verdict and judgment for the defendant. The plaintiff appealed, assigning error upon the rulings on the evidence, and the giving of the above written charges for the defendant.

J. A. W. SMITH, for appellant.

DENSON & BURNETT, *contra.*

McCLELLAN, J.—According to a tendency of the evidence in this case, the defendant's possession of the land sued for upon which he relied as vesting the title in himself by an adverse holding of more than ten years duration, "was not adverse, but was in recogntion of a supposed title in the government, or in the railroad; that defendant while in possession of said land spoke of its being government or railroad land; that the defendant purchased a pre-emption claim from Franklin Hale about twenty years ago, and that he claimed during the time of his occupation of the lands only a pre-emption right and his improvements upon said land, and that Franklin Hale claimed that he had pre-empted said lands and that he occupied and claimed said lands because he had pre-empted them, and that while defendant was residing on said land he often spoke of it as pre-empted land." A pre-emptor is one who by settlement upon and improvement of public land acquires a right to purchase the particular land to the extent of one hundred and

[Doe *ex dem.* Alabama State Lavd Co. v. Beck.]

sixty acres in preference to others by paying the minimum price thereof, provided it is, or when it becomes open to sale. By their pre-emption laws the United States do not enter into any "contract with the settler or incur any obligation that the land occupied by him shall ever be put up for sale." Rev. Statutes (U. S.) § 2259 ; 19 Amer. & Eng. Encyc of Law, p. 313 ; *Hutchins v. Lowe*, 15 Wall. 77. The settler's right is valid, in the sense of being enforceable when the conditions of its existence are fulfilled, and creates an equity in his favor whereby he may buy in preference to others and pay less than others ; but this is the extent of it : he has no title to the land until he has bought and paid for it, and holding possession solely, as he must if he claims only as a pre-emptor, under this preferential right to acquire the title by purchase upon terms more favorable to him than to others, his possession is of necessity in subordination to and recognition of the title he thus desires and intends to acquire at some future time, or when the land is put up for sale. And where the land, as here, was never put for sale by the government, but instead was granted to a State for purposes of internal improvements, and after such grant the would be preemptor continnes in possession claiming, not title, but a mere right to purchase, though in point of fact and law no such right could ever accrue to him after the government grant, such possession would likewise be in recognition of the outstanding title, and not adverse to such grantee or those claiming title through it. Such possession is lacking in the element of claim of ownership and title against all the world essential in the constitution of an adverse possession which, if continued for ten years, will itself ripen into title. It is clearly not sufficient that the claim be of a mere right in certain contingencies to acquire the title—such claim in itself recognizes an outstanding title—but the claim must be that the occupant has the entire title.—*N. O. & S. R. R. Co. v. Jones*, 68 Ala. 48, 55 ; *Dothard v. Denson*, 75 Ala. 482.

We do not find that any violence was done to the foregoing principles by the instructions given at the instance of the defendant, and now presented for review. The defendant's evidence tended to show that he purchased the rights of Hale in the land taking from him a paper

[Doe *ex dem.* Alabama State Land Co. v. Beck.]

purporting to convey all the latter's "interest and improvement" therein, and "moved to and went into actual possession of some twenty or thirty acres of land in suit (200 acres), claiming the whole of it. That he built houses on the land actually occupied by him, fenced it and cultivated it. As to the other lands he used firewood, rail timber, lumber for houses from all parts of it continuously for over twenty years, and during the whole time claimed the lands as his own." The paper writing referred to was made to do duty in the case only as color of title upon which the possession of that part of the land not actually occupied by the defendant would be referred also to him. It is in this light that the paper, or the pre-emption right conveyed or transferred by it is referred to in charge 5. That instruction submits to the jury in effect, when referred to the evidence, whether the defendant had had adverse possession, i. e. an actual open, notorious and hostile possession under claim of ownership and title, for ten years, and directs them, if they find such actual possession of a part of the land, and further find that possession was under this color of title embracing all of it, to return a verdict for the defendant. This charge, when subjected to critical examination, does not, in our opinion, authorize a verdict against the plaintiff on the ground that defendant had held possession under a pre-emption claim for more than ten years, but refers to that claim, or rather the paper by which it was transferred to the defendant, not as determining the character of his claim, but only as evidencing the surface extent of his possession and claim of ownership. If it was apprehended that the charge would mislead the jury, an explanatory instruction should have been asked; and for aught we know such instruction may have been requested and given.

Charge 6 is not open to the objection made to it in argument. Open, notorious and continuous adverse possession involves a claim of the whole title and ownership; and hence this charge does not violate "the rule that to constitute adverse possession the claim must be of the entire fee and against the right of all the world."

Charge 7 is admitted by counsel to state the law correctly "as it was prior to the act regulating adverse possession. Acts 1892-3, p. 478.' As the defendant's possession, if it was adverse, had ripened a perfect title in

him before that enactment, the law existing prior thereto is the law of this case.

If these charges are faulty at all it is in respect of their omission to define "adverse possession," and perhaps they might have been well refused on that ground; but it does not follow that the giving of them was erroneous.

Error, to authorize and require a reversal, must affirmatively appear. The presumption here favors regularity and correctness in the rulings of *nisi prius* courts, It is probable that plaintiff's question, "You gave in your property again under oath in 1892?" propounded to the defendant had reference to the assessment of the latter's taxes for the year named, and if that had been made to appear the question should have been allowed; but there is nothing in the record on the subject but the question itself, defendant's objection to it—one ground of which was that "it did not appear how or in what way the question was related to any matter in the cause"—the court's ruling upon the objection and plaintiff's exception thereto. We cannot, therefore, clearly see and affirmatively declare that the evidence sought to be elicited was relevant to the issues in the case.

There being evidence tending to show that the defendant had said explanatory of his possession that he held under pre-emption right and that these were "preemption lands," it would have been contempt to have asked him, what he understood "by pre-emption lands?" This would have had a bearing on the character of his claim; but the understanding of another witness, or the general understanding, of the phrase was not competent to give a meaning to it in the mouth of the defendant.

Plaintiff showed muniments of title to the land in suit. In rebuttal he offered to prove by parol "that one E. J. Beck was in the actual possession of the north half of the northeast quarter of section 27, being the section in which the lands in suit are situated, and adjoining them, holding the same under a lease from plaintiff, and had so been in the actual possession of said land for several years before the suit was brought, but that said Beck did not take possession of said land until a long number of years after the defendant went into possession of the land in suit. Counsel for plaintiff at the time of making said offer, explained that the object sought was to show

[Elston *et al.* v. Comer.]

actual possession of the plaintiff of adjoining land, ''so as to cut off any constructive possession of the defendant by reason of his color of title.'' The court properly excluded this proposed testimony. The lease under which E. J. Beck, as plaintiff's tenant, held actual possession of a specified eighty acre track of land, no part of which is embraced in defendant's color of title, is itself an express limitation of plaintiff's possession by this tenant to that particular subdivision, leaves no room for the operation of the principle which refers the possession of lands not actually occupied to the title when the true owner is in actual possession of a part. And, moreover, it appears that the title of defendant to the land embraced in his color of title, if his possession was adverse, had been perfected by lapse of time, before the commencement of this possession by E. J. Beck, which was to be relied on to confine defendant's ownership by adverse possession to that part of it actually occupied by him.

The judgment of the circuit court must be affirmed.