# Tennessee Coal, Iron & Railroad Co. v. Linn.

*Statutory Action of Ejectment.*

1. *Adverse possession; title indefeasible notwithstanding the subsequent change in statute of limitations.*—Where a person has acquired an indefeasible title to land by adverse possession, no abandonment by him of possession or any other act short of a conveyance, will divest him of such title; nor can the title be divested by any subsequent legislative enactment, since the law existing prior thereto and at the time of the ripening of the adverse possession into a title is the law which governs such cases.

2. *Same; same; school lands.*—Adverse possession of school lands for ten years prior to the enactment of the statute approved November 30, 1876, exempting all sixteenth section lands from the operation of the ten year statute, (Acts of 1876-77, p. 102) was sufficient to create a perfect title in the party so in possession of such lands, and the fact that after such ten years' possession there was a statute passed fixing the limitation against school lands at twenty years, does not affect the title so acquired; and, therefore, the holder of a patent title to

[Tennessee Coal, Iron & Railroad Co. v. Linn.]

such lands, which was issued after the passage of said subsequent statute, acquired no title as against an adverse holder, who had, prior to the passage of said statute, been in possession for ten years.

3. *Same; parol contract of sale of lands fixes the extent of possession to possessio pedis of person claiming thereunder.*—The adverse possession of one entering and holding under a valid parol contract of sale, after having paid the purchase money, is limited to his *possessio pedis* and only extends to the lands in his actual possession, and not to the boundaries of the lands purchased as in the case of one holding under a written color of title. (TYSON, J., *dissenting.*)

4. *Ejectment; effect of plea of disclaimer in former suit; charge to the jury.*—In an action of ejectment, a charge which bases the defendant's right to a verdict as to a certain portion of the land in controversy, upon the theory that his disclaimer to that portion of the land in a former suit of ejectment between the same parties, wherein the present plaintiff was defendant, estops the plaintiff to claim said lands in the pending suit, is properly refused when the record discloses that the plea of disclaimer in the former suit was not sworn to; since, in such case, the unsworn plea was a mere suggestion of counsel, not binding upon the party litigant in whose behalf it was filed, and was, therefore, inadmissible in evidence in the subsequent suit.

4. *Same; adverse possession; evidence as to general notoriety of title in the neighborhood.*—In an action of ejectment by one claiming title to the land sued for by adverse possession, where there is evidence tending to establish the plaintiff's title, it is competent for the plaintiff to prove that it was generally known in the neighborhood that the land sued for belonged to him.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This was a statutory action of ejectment, brought on January 14, 1897, by the appellee, Samuel Linn, against the Tennessee Coal, Iron & Railroad Company, to recover the possession of all of the northwest quarter of section 16, township 16, range 4 west, in Jefferson county, except that part of said northwest quarter which was designated as the "flats of Five Mile Creek," which excepted portion is specifically described in the complaint.

The trial was had upon issue joined upon the plea of the general issue. The undisputed evidence shows that

8

the land in controversy was a part of the school lands under grant from the Federal Government; that the plaintiff, in the spring of 1865, being then the owner and in possession of another tract of land in the same township and range, by parol, exchanged the land so owned and possessed by him, with his brother, Jack Linn, for the lands in controversy; that, immediately upon making said exchange, he surrendered to his brother the possession of the land which he owned, and, under said exchange, his brother delivered to him, and he took possession of, the land sued for; that a small part of this land was then cleared and fenced, but the balance thereof was wild, wooded and montainous lands; that, after taking possession of the lands sued for, in the spring of 1865, the plaintiff cleared other small portions of the land and inclosed the same, and afterwards cleared another small portion and inclosed that with a fence; that his brother Jack Linn, claimed title to the land sued for under purchase by him from the township trustees, some time prior to the exchange, and that he was in possession at the time of the exchange, claiming under his purchase. It was also shown that the defendant brought an action of ejectment against the plaintiff in the fall of 1894, to recover the land in controversy, and in the spring of 1865, recovered a judgment for all the land except about sixteen acres which had been cleared and in cultivation; and under this judgment, the plaintiff was ousted of possession of the portion of the land recovered by the judgment.

Without stating in detail the testimony, it is sufficient for the purposes of this appeal, to say that the testimony introduced on behalf of the plaintiff, in addition to the facts above stated, tended further to show that plaintiff continued in the possession of the wild and uncleared land sued for from the date of said exchange, in the spring of 1865, until he was ousted under said judgment in 1895, and of the cleared portion of the land until the date of this trial, claiming all the time to own said lands; and that his possession was continuous, adverse, open and notorious. Plaintiff's testimony further tended to show that the cleared portion of the land he cultivated,

in person or by tenants, or used the same for pasturage, during all of said time, the same being inclosed; that the uninclosed portion of the land was wild, mountainous woodland, unfit for cultivation, and that the acts evidencing his possession of this portion of the land were such as it was susceptible of, such as obtaining fire-wood, logs and timber therefrom from year to year, as occasion required, and going upon and over said land, directing where the fire-wood, logs and timber should be cut, and returning for taxation and paying the State and county taxes thereon each year from the date of said exchange to the date of the trial.

The plaintiff as a witness in his own behalf testified that he had never had his line run by the surveyor until 1894, when said lines were run by one Milner, the county surveyor. Said Milner, as a witness for the plaintiff, testified that at the request of the plaintiff, in 1894, he made a survey of the lands in controversy, just before the trial of the former suit in ejectment brought by the defendant in this suit against the present plaintiff; that the plaintiff went with him when he made said survey and told him that he wanted him to lay out 100 acres of the mountain lands in the northwest quarter of section 16, township 16, range 4 west, and told him to start at the northwest corner of the section and run south one-half mile, then east one-half mile, and then to run west; that when they had gotten north one-quarter of a mile, the plaintiff wanted the witness to go further north, but upon being told by the witness that if he went further north it would take in more than 100 acres, the plaintiff directed him to stop at the northeast corner of the southeast quarter of the northwest quarter of said section, and then run west along the quarter line to a designated point, and then to run diagonally in a northwesterly direction to a point 200 feet south of the northwest corner of the section on the west line of the section; and that the reason for so laying out the lines was to include in the survey only 100 acres, as was then stated by the plaintiff to the witness.

The testimony of three of the plaintiff's witnesses tended to show that the plaintiff only claimed 100 acres

in said quarter section. The plaintiff, as a witness in his own behalf, testified that on the former trial of the ejectment suit between the same parties for the same lands, he had disclaimed possession and title to the land described in the plea of disclaimer then filed, and that he had employed Milner to make the survey testified. to by him for the purpose of making his defense to the former suit.

The testimony for the defendant tended to show that on the former trial of the ejectment suit brought by the defendant against the present plaintiff, the plaintiff in this case testified that he had traded with his brother, Jack Linn, the lands in section 10 for 100 acres of the mountain land in the northwest quarter of section 16, and that until he had Milner to run his line in 1894, he, the plaintiff, did not know any of his lines except the west line of the section, or any of its corners except the northwest corner of the section, and the one-half mile corner of the west line of said section.

The testimony for the defendant further tended to show that the plaintiff assessed the lands claimed by him in said quarter section for the years 1890, 1891 and 1892 as parts of each of the four forties in the northwest quarter, amounting to 100 acres, and in the year 1893, as the west half of the quarter section and the west half of the west half of the quarter section. The testimony for the defendant further tended to show that in the year 1876 the three fields which constituted the only cleared and inclosed lands in the said quarter section ceased to be cultivated; that the fences were allowed to get out of repair; that the fields grew up in undergrowth, and that during this time no one lived on the land, and that this state of affairs continued until 1889, when the plaintiff built a new fence around two of the fields, and built a house and inclosed a yard around it to be used by his son.

It was further shown by the testimony that the said quarter section was part of the school sixteenth section lands under grant of Congress to the State of Alabama, and that according to the survey by the witness Milner there were 15 acres in said quarter section "in the flats

of Five Mile Creek," which were not claimed by the plaintiff; that there were 145 acres in said quarter section, except the "flats of Five Mile Creek," and that the lands described in the complaint in this action were all the lands in said quarter section, except the flats of Five Mile Creek; that no part of the lands sued for had ever been cleared or inclosed, except the fields and cleared lands as described; and that the lands as surveyed by Milner in 1894 and described in the plea of disclaimer contained 100 acres.

It was further shown by the evidence that the lands thus inclosed were wooded and uncleared and not suitable or adapted to cultivation, and that there was a bluff which ran above the flats of Five Mile Creek which separated them from the mountain lands in said quarter section. It was admitted on the trial that the map which was introduced in evidence was a correct map of the lands showing the cleared fields numbered 1, 2 and 3, and that said cleared fields were those which had been used by the plaintiff.

The plaintiff, on rebuttal, testified that in directing Milner to make the survey, he acted under the advice of the attorney who defended the suit for him, which advice was to the effect that he had better claim only 100 acres in said quarter section.

The defendant offered in evidence the record of the plea of disclaimer in said former suit in ejectment. The plaintiff objected to the introduction of said plea, upon the ground that it was immaterial and illegal evidence, and because it was merely the suggestion of the plaintiff's counsel in that case, and not binding on the plaintiff. The court allowed the introduction of said plea, but restricted its purpose to the jury to that of identifying the land which the plaintiff had stated in his testimony was covered by the plea of disclaimer in said former trial. To this limitation the defendant duly excepted. It was admitted by counsel for both parties that the description contained in the plea of disclaimer was the same description contained in the survey made by Milner in the fall of 1894 of the lands at the plaintiff's request, and at his direction, as testified by said Milner. It was also admitted that at the end of the former suit

in ejectment which was May 1, 1895, the plaintiff was ousted by the defendant of the lands claimed in this suit, except the said cleared portions thereof. The defendant introduced in evidence a deed from Jack Linn and wife to the defendant, for the lands in controversy, executed November 8, 1880, and a patent from the State of Alabama to the defendant for the lands in controversy, issued by the State of Alabama in 1890.

The plaintiff was allowed to prove, against the defendant's objection, that the plaintiff, during the ten years of his occupancy, from 1865 to 1876 was generally reputed to be the owner of the lands in the neighborhood. To this ruling the defendant duly excepted.

It having been shown that the plaintiff acquired possession of the lands from his brother by exchange, and that the lands had been purchased by his brother from the township or school trustees, the plaintiff was asked on cross-examination, whether his brother had paid the purchase price for said lands? The plaintiff objected to this question, upon the ground that the testimony sought to be elicited thereby was immaterial and irrelevant. The court sustained the objection and the defendant duly excepted.

Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe from the evidence that the plaintiff, Sam Linn, before the time that Milner made his first survey, did not know the description of the lands he claimed in the northwest quarter of the school section, and if the jury further believe from the evidence that the land which Sam Linn got from his brother, Jack Linn, was one hundred acres of the mountain land of said quarter section, and that there was 145 acres of such mountain land in said quarter section, then there can be no recovery of any of the uninclosed and uncleared land in said quarter section in this action." (2.) "If the jury believe from the evidence, that the plaintiff Sam Linn, when he cut the timber off the lands sued for, if the jury believe from

the evidence that he did so cut it off, did it without know-ing the boundaries of his land, and without reference to any defined boundaries, then there can be no recovery in this action for the uninclosed and uncleared woodland, not included in the three fields numbered 1, 2 and 3 on the map introduced in evidence." (3.) "Unless the jury believe from the evidence that the plaintiff has been in open, adverse, exclusive and notorious possession of the lands described in the complaint or some part of them, continuously for a period of twenty years, ending at some time before the commencement of this action, either in person or by tenants or agents, the jury must find for the defendant. (4.) "Under the evidence in this case, I charge you that the statute of limitations of twenty years applies to the plaintiff's title by posses-sion." (5.) "Under the evidence in this case, I charge you that it would require twenty years' adverse posses-sion of the lands sued for or some part of them to bar the defendant's claim thereto under its patent." (6.) "Without color of title in the applicant mere cutting of timber and wood from all parts or uninclosed and un-cleared and wild land by him, would not be sufficient to constitute adverse possession of such lands in him." (7.) "If the jury believe from the evidence that in a former action between the same parties to this action, for the recovery of the possession of the same land sued for in this action, the plaintiff herein disclaimed all right, title and interest in and possession of any part of such lands by plea filed in said suit, then the jury must find for the defendant as to such part of such land." (8.) "If the jury believe from the evidence in this case that up to the time of the former trial between the parties to this case the plaintiff did not claim but one hundred acres of mountain land in the north-west quarter of the school section, then the jury must find for the defendant as to that part of the lands sued for not included in the fields numbered 1, 2 and 3 on the map introduced in evidence in this case." (9.) "If the jury believe the evidence in this case, they must find for the defendant."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were re-served.

WALKER PERCY and W. I. GRUBBS, for appellant.—The court erred in overruling the defendant's objection to the introduction of testimony offered by the plaintiff tending to show that the general reputation in the neighborhood of said lands was that said lands belonged to plaintiff.—*Woods v. Montevallo C. Co.*, 84 Ala. 564; *Goodson v. Brothers*, 111 Ala. 596; *Ross v. Goodwin*, 88 Ala. 390; *Woodstock I. Co. v. Roberts*, 87 Ala. 442; *Benje v. Creagh*, 21 Ala. 151.

The filing of a disclaimer on the former suit estopped appellee from afterwards claiming the lands, then disclaimed, in a subsequent suit. The result of his action in filing this disclaimer in the former suit was to impose the costs on appellant here of that suit, which would otherwise have been imposed on appellee here. The court below held that the testimony of appellee as to the disclaimer was not more than a mere admission, and that the plea was only admissible to explain appellee's testimony by showing what lands he disclaimed, and could not be used as an estoppel in the present suit. In this, we think the court erred.—*Tappan v. Boston W. P. Co.*, 157 Mass. 32; *Porter v. Rummery*, 10 Mass. 64; *Prescot v. Hutchinson*, 13 Mass. 439; *Oakham v. Hall*, 112 Mass. 539; *In re Burrell*, 17 W. R. 516; 7 Eq. 399; *Wood v. Taylor*, 3 Eq. 513; *Greely v. Thomas*, 56 Pa. St. 35; 6 Amer. & Eng. Encyc. of Pleading, 725; Herman on Estoppel, 65, § 69.

Ten years possession relied on by plaintiff was not sufficient to establish a perfect indefeasible title in him, to authorize a recovery in the present suit. The lands sued for were school lands; and therefore, the appropriate statute of limitations applicable to said lands was that of twenty years. Prior to the Code of 1852, there was no twenty year statute of limitation for actions brought by the State against a citizen for the recovery of real and personal property. Hence the only possible resort was to the ten year statute, applicable generally to actions brought for the recovery of real property—the act of 1843. In 1876 the legis-

lature amended section 2900 Revised Code of 1867 (§ 2475, Code, 1852), by declaring that the ten years limitation for recovery of real property should not apply to actions by township trustees of any township for the recovery of school lands. This we submit was merely declaratory of the law as it then existed. It only made more certain that the twenty year statute and not the ten year statute applied to such actions. If the twenty year statute had not applied before the amendment of this section, then, after it was amended, no statute would be applicable, since the amending act did not attempt to create a new statute of limitation for such actions, but only to except such cases from the operation of the ten year statute. This did not make the twenty year statute applicable, and if it was not applicable before, then from the passage of the act of Nov. 30, 1876, amending section 2900 Code of 1867 (Acts of 1876-77, p. 102) until the adoption of the Code of 1886, there was no statute applicable to such cases. Yet, this court has repeatedly held that the State in such suits could be barred by lapse of time. The case of *State v. Connor,* 79 Ala. 212, is not an authority that the ten year statute applies. In the case of *Wyatt v. Tisdale,* 97 Ala. 594, this court held that the twenty year statute applied to actions for the recovery of school lands. The same principle is declared in the case of *Gaston v. The State,* 88 Ala. 459; *Prestwood v. Watson,* 111 Ala. 604.

Appellee had no written evidence of title. He claimed the land sued for under a verbal exchange, being put in possession under it. This gave him no color of title. A parol contract may give color of title as between the parties to it, where the purchase money is paid and possession is taken, but not as against strangers. The contract in parol betwen Jack Linn and Sam Linn, to which appellant (claiming under the State) was an entire stranger, gave no color of title to appellee as against appellant. The case of *Normant v. Eureka Co.,* 98 Ala. 188, clearly shows this,

The doctrine in this State has always been that color of title exists only where title is evidenced by a written instrument. This is the result of a long and uninterrupted current of decisions in this State. This doctrine of the court in the *Normant case* is not to be disturbed. It is only as between vendor and vendee and between execution defendant and purchaser at execution sale that there can be color of title without written evidence of title. In such cases the terms of contract advise each party of the extent of the claim.—*Clements v. Hays,* 76 Ala. 280; *L. & N. R. R. Co., v. Boykin,* 76 Ala. 566; *Stovall v. Fowler,* 72 Ala. 77; *Bell v. Denson,* 56 Ala. 448; *Dothard v. Denson,* 75 Ala. 483; 1 Am. & Eng. Encyc. Law, 848; *Cook v. Long,* 27 Ga. 280; *Allen v. Mansfield,* 108 Mo. 343.

JOHN P TILLMAN and BENNERS & BENNERS, *contra.*

The first and most important question presented by the record is, what statute of limitation controls in this case; the lands being a part of the school lands originally granted by act of Congress, for school purposes. By the act of Congress, approved 2d of March, 1819, admitting this State into the Union, the sixteenth section in every township was granted to the inhabitants of such township, for the use of schools. In *Long v. Brown,* 4 Ala. 629, it was held by this court that the legal title to these lands could not vest in the inhabitants of the township, as they then had no corporate existence, and that such a capacity could not be conferred on them by the act of Congress; that the grant was in perpetuity to the inhabitants of the several townships, but that the legal title vested in the State, in trust for the inhabitants of the respective townships in which the lands lie. This construction was reaffirmed in *Miller v. State,* 38 Ala. 600. In the case last cited after discussing decisions in other jurisdictions, the court says: "However this may be, there could be no doubt that the

[Tennessee Coal, Iron & Railroad Co. v. Linn.]

beneficial ownership of the property is in the township, and that a suit for the recovery of the sixteenth section is a suit for the benefit of the inhabitants of the township, and not for that of the State at large."

It was then held in the case of *Miller v. The State,* that "Though the State is a party to this suit, it has no real interest in the litigation. If there be a right of recovery, the property sued for belongs, not to the State, but to the township; so that, in point of fact, the suit is substantially between the township and the defendant. The same questions involved in the *Miller Case* were before the court in the subsequent case of *State v. Conner,* 69 Ala. 212, and the same rule was announced and approved. In both the *Miller* and *Conner Cases,* it has therefore, been held that the statute of ten years applies to a case brought to recover sixteenth section lands, even though the State was plaintiff, suing for the use of the township; and that the fact that the vendor of the defendant had not fully paid the purchase money, does not interfere with the operation of the statute. The statutes of limitations in respect to lands continued as codified in the Codes of 1852 and 1867, until the 30th day of November, 1876, when the legislature incorporated into the ten year statute the following proviso: *"Provided, however,* That this shall not apply to actions brought by trustees of any township for the recovery of Sixteenth Section or other school lands belonging to the township"; and, as thus changed, the statute was incorporated into the Code of 1896. Whatever may be the meaning of this proviso, whether the intention was that the twenty year statute should thereafter control such actions, or whether it was to have such actions without express limitation, leaving them to be controlled merely by the rule of repose, as known to the common law, it is not material in this case to inquire; and this because, at the time the statute was so amended, the bar was complete, thereby vesting in the plaintiff title to the lands, provided the jury were satisfied that he had been in adverse possession from the date of the exchange to the date of the approval of the amendatory statute. For it is undisputed that the exchange was made in the *Spring* of 1865. It follows, therefore, that the Circuit

[Tennessee Coal, Iron & Railroad Co. v. Linn.]

Court did not err in charging the jury, in its general charge, in respect to the limitation of ten years; or in refusing to give the written charge asked by the defendant to the effect that the statute of limitations applicable to this case was that of twenty years.

The cases of *Gaston v. State,* 88 Ala. 459; *Wyatt v. Tisdale,* 97 Ala. 594; and *Burks v. Mitchell,* 78 Ala. 61, are not in conflict with the principles here announced.

A paper writing is not necessary to give color of title. Whenever a man claims land under a contract, whether that contract be written or oral, then that contract should be looked to in ascertaining the extent of his possession. The theory is, that it should not be left to a trespasser to say that, when he took possession, and during the time he continued in possession of, a part of the land, he intended to take possession of the whole. Having no claim of title to which he could refer his possession, his possession must be actual, not constructive; it cannot be extended by the trespasser's intention. In the case, however, of a sale of lands, (and the exchange in this case was a sale), whether that sale be evidenced by a writing or rests solely in parol, the claim of the party going into possession under the sale, as to the extent and character of his possession, is susceptible of proof, and by that proof the boundaries of his claim are made as certain and definite as if the sale had been evidenced by a writing, stating the character and extent of his claim. Nothing is left to the will or intention of the party in possession as to the extent or character of his possession. He can no more, by his own act or intention, extend by construction his possession than if he could if the sale was reduced to writing. The only difference lies in the character of the proof necessary to show the contract under which he claims.—*Normant v. Eureka Co.,* 98 Ala. 181. Nor can it make any difference in principle that the asserted adverse possession is against another than Jack Linn. The question is not, whether the contract is binding on others than Jack Linn; but whether there is any contract between Jack Linn and his brother defining the boundaries of the land obtained by the plaintiff in the exchange. The oral contract fixes these

boundaries as completely and effectually as a deed executed by Jack Linn to his brother would have done; and there is no doubt, under the authorities, that such a deed, though it did not convey the title, would operate as color of title.

In 1 Am. and Eng. Ency. of Law, (2d ed.), 848, it is said: "Color of title is commonly claimed by virtue of some written instrument . And it has sometimes been held that it is only upon some writing that color of title can be based. But other authorities favor the rule that a writing is not essential, that color of title may arise from an act *in pais* without a writing." See also *Teabout v. Daniels,* 38 Iowa, 158; 2 Smith L. Cases (8 Am. ed.), 711; *Hughes v. Israel,* 73 Mo. 538; *McCall v. Neely,* 3 Watts (Pa.) 69; *Green v. Kellum,* 23 Penn. St. 254; s. c. 62 Am. Dec. 332; *Bell v. Longworth,* 6 Ind. 273; *Niles v. Davis,* 60 Miss. 750; *Davis v. Bomar,* 55 Miss. 671; *Davis v. Davis,* 68 Miss. 478; *Runnels v. Runnels,* 52 Mo. 112; *Tate v. Southard,* 14 Am. Dec. 581, note; *McClellan v. Kellogg,* 17 Ill. 501, and authorities there cited; *Van Cleave v. Milliken,* 13 Ind. 105; *City of St. Louis v. Gorman,* 29 Mo. 593; *Cooper v. Ord,* 60 Mo. 431; *Baker v. Hall,* 6 Baxt. 46; *Wickes v. Lee,* 25 Wis. 71; *Miller v. Shaw,* 7 S. & R. (Penn.) 143; *Brown v. King,* 5 Met. (Mass.) 173; *Magee v. Magee,* 37 Miss. 138; *Robertson v. Wood,* 15 Ark. 1.

What constitutes possession depends upon the character of the lands; and whether there is such possession, and its nature and extent, are questions for the jury. In this case a part of the lands was tillable, and enclosed, as the tendency of the plaintiff's testimony showed. As to this part of the land, we cannot see that there is any question raised. But the large part of the lands was wild, mountainous woodland, unfit for cultivation, or any other purpose than the wood and timber upon it. The plaintiff's testimony tended to show that he was in possession of this land for the necessary period, and that his possession was adverse, open and continuous, under claim of title. The defendant does not dispute that plaintiff was ever in possession, but claims that such possession was not continuous. It is not contended that there was any break in the possession by en-

try of any one, or by ouster until 1895; but the contention was, and is, that the acts of possession shown do not make a continuous possession. Whether this was true or not, was a question for the jury, and by their verdict they held it was. The acts of possession were clearly sufficient to leave the question to the jury; such as going upon the land constantly, cutting firewood,- timber and logs therefrom, returning the same for assessment and paying taxes thereon.—*Bell v. Denson,* 56 Ala. 444; *Jay v. Stein,* 49 Ala. 514; *Baucum v. George,* 65 Ala. 259; *Collins v. Johnson,* 57 Ala. 304; *Potts v. Coleman,* 67 Ala. 221; *Humes v. Bernstein,* 72 Ala. 546; *Trufant v. White,* 99 Ala. 526; *Gary v. Woodham,* 103 Ala. 421; *Hughes v. Anderson,* 79 Ala. 209;

There can be no question as to the proposition that the statute of limitations operates upon the title to property, defeating that of the true owner and vesting it in the party holding adverse possession.—*Molton v. Henderson,* 62 Ala. 426; *Brown v. Brown,* 5 Ala. 508; *Lay v. Lawson,* 23 Ala. 377; *Burks v. Mitchell,* 78 Ala. 61; *Alexander v. Alexander,* 78 Ala. 167; *Smith v. Roberts,* 62 Ala. 83; *Barclay v. Smith,* 66 Ala. 230.

Nor can it be denied that an uninterrupted, continuous possession of lands by a donee, under a mere parol gift, accompanied with a claim of right, is an adverse holding as against the donor, and will be protected by the statute of limitations; thus maturing into a good title by lapse of the statutory period.—*Vandiver v. Stickney,* 75 Ala. 225; *Collins v. Johnson,* 57 Ala. 304; *Lee v. Thompson,* 99 Ala. 95.

Adverse possession being once shown, is presumed to continue until the contrary appears.—*Marston v. Rowe,* 43 Ala. 271; *Abbott v. Page,* 92 Ala. 575; *Elyton Land Co. v. McElrath,* 53 Fed. Rep. 763; 3 C. C. A. 649; *Hollingsworth v. Walker,* 98 Ala. 543.

"When a title to land has been acquired by adverse possession under a statute, the legislature does not possess the power to destroy the same, and a repeal of the statute does not divest the title."—1 Wood on Limitations, p. 48, 14; *Knox v. Cleveland,* 13 Wis. 245; *Ala. Land Co. v. Beck,* 108 Ala. 71.

TYSON, J.—It appears without dispute that in the spring of 1865, the plaintiff, who was a farmer by occupation, acquired the possession of one hundred acres of the land in controversy from his brother by an exchange for other lands. This exchange was not evidenced by any writing, but the plaintiff went into the actual possession of the land and made some improvement by clearing and cultivation and continued to clear, fence and cultivate the tillable portion, increasing the acreage of tillable land to sixteen acres. The remaining portion of the land was uncleared, grown up in trees and other growth, wild, mountainous and unfit for cultivation, from which he got, as he needed it during each of these years, his fire wood, rails, timber for his own use, and cut therefrom frequently timber which he disposed of to others. There were three houses upon the tract which were occupied by tenants of plaintiff from 1865 to 1868, when they were destroyed. The continued use of the land under his contract of exchange, in the manner indicated above, in connection with the lands adjoining owned by him upon which he lived, was exercised by him uninterruptedly until the year 1876, when the testimony offered by the defendant tended to show, which however was disputed, that he ceased to cultivate the fields, and the fences around the cultivable lands were allowed to fall down in places, and shrubbery was permitted to grow up on them, until the year 1889, when he rebuilt the fences and a new house and enclosed a yard around it, to be used by his son as his tenant. It was also proved without dispute that plaintiff's brother claimed title to the land sued for under a purchase by him from the township trustees, some time prior to its exchange to the plaintiff, and that he was in possession of it at the time the exchange was made claiming under his purchase. It was also without dispute that plaintiff's brother never claimed these lands after the exchange, and that it was generally known in the neighborhood that plaintiff claimed to own the lands, and that his possession was never interrupted by any one until the defendant brought its action in ejectment against him in 1894, and obtained a judgment for all the land except that in cultivation and enclosed.

We have stated the undisputed facts as shown by the bill of exceptions.    For if the plaintiff acquired an indefeasible title by adverse possession to the lands during the years intervening between 1865 and 1876, no abandonment by him of the possession or any other act, short of a conveyance by him, could divest him of it.    Nor could the title be divested by any subsequent legislative enactment; and the law existing prior thereto and at the time of the ripening of the adverse possession into a perfect title is the law of this case.—*Doe ex dem. Ala. State Land Co. v. Beck,* 108 Ala. 71.

The first question then presented is, this being school land and the defendant claiming under a patent from the State of Alabama dated in 1890, and a deed from the plaintiff's brother with whom he made the exchange, whether ten years' adverse possession or twenty years' adverse possession was required to ripen this possession into a perfect title?

Under the Codes of 1852 and 1867 we find the limitation of actions for the recovery of real estate to be as follows:

1.    Actions at the suit of the State of Alabama against a citizen thereof for the recovery of real estate must be commenced within twenty years after the accrual of the cause of action.

2.    Actions for the recovery of lands, tenements or hereditaments or the possession thereof must be commenced within ten years after the cause of action has accrued.

Prior to the Code of 1852 there was no statute as to time limiting the right of the State to enforce a cause of action brought for the recovery of lands belonging to it.    This was the condition that existed as to the statute of limitation when the rights of Miller, the defendant in the case of *Miller v. The State,* 38 Ala. 600, accrued. And when sued in an action of ejectment by the State for the use of the township trustees for sixteenth section lands, he invoked the defense of adverse possession for ten years, which was denied to him by the circuit court. On appeal, Justice WALKER, speaking for the court, said: "Though the State is a party to this suit, it has

no real interest in the litigation. If there had been a right of recovery the property sued for belongs, not to the State, but to the township; so that in fact the suit is substantially between the township and the defendant. The Code expressly provides that, in all cases where suits are brought in the name of the person having the legal right, for the use of another, the beneficiary must be considered as the sole party on the record. In our opinion, the rule that the statute of limitation does not run against the State, has no application to a case like the present, when the State, though a nominal party on the record, has no real interest in the litigation, but its name is used as a means of enforcing the rights of a third person who alone will enjoy the benefits of recovery." He then proceeded at length to show that the defendant was an adverse holder, and should be protected by the statute of limitations of ten years.

The statute of limitations in respect to lands continued as codified in the Codes of 1852 and 1867, and the construction in the case of *Miller v. The State,* above quoted, until the 30th day of November, 1876, when the legislature for the evident purpose of relieving trustees of all sixteenth section lands from the operation of the ten year statute as applied in that case, amended the statute exempting them from its operation.—Acts, 1876-77, p. 102. After the passage of this act the case of the *State v. Conner,* 69 Ala. 212, was before this court. This was an action of ejectment brought by the State for the use of a township to recover of Conner school lands, and was tried in the circuit court on issue joined upon the plea of not guilty which resulted in a verdict and judgment for defendant. The evidence introduced in behalf of defendant tended to establish an adverse possession by him for ten years prior to November 30, 1876, and before the commencement of the suit. And for the purpose of further establishing his adverse possession he was allowed to introduce certain conveyances as color of title under which he acquired possession and claimed title to the lands, against the objections of the plaintiff to which an exception was reserved. In addition to this exception, the plaintiff requested a charge in writing to the effect that the statute of limitations of ten years

was no defense to the action, which was refused by the court, to which an exception was also reserved by the plaintiff. Again this court, following the decision in the *Miller Case,* through Judge STONE, held the statute of limitations of ten years was a good defense, and affirmed the rulings of the circuit court. The principles announced in these cases were recognized in the case of *Burks v. Mitchell,* 78 Ala. 61, and the latter case above referred to was cited with approval.

It is insisted by appellant that the cases of *Gaston v. The State,* 88 Ala. 459, *Wyatt v. Tisdale,* 97 Ala. 594, and *Prestwood v. Watson,* 111 Ala. 604, are in conflict with the doctrine laid down in the *Miller* and *Conner Cases,* and being later adjudications of this court should be followed. Before entering upon a discussion of these cases, which we will do in the order named above, it will be well to note another change in the statute of limitations. The act of November, 1876, was carried into the Code of 1876 (§ 3225), and remained in force until the adoption of the Code of 1886. Section 2613 (Code, 1886) provides: "Actions by or for the use of any township for the recovery of sixteenth section or other school lands belonging to the township" must be commenced after the cause of action has accrued within twenty years and not afterwards. This was the first time the legislature made, by express declaration, the twenty years statute applicable to causes of action arising out of adverse holding of school lands. This provision will be found in the Code of 1896 (§ 2794). It was while this section of the Code of 1886 was in force that these decisions were made. In the case of *Gaston v. The State,* the suit was commenced in 1888, and the plea of adverse possession of fifteen years was held bad, for the obvious reason that the bar was not complete when the act of 1876 was passed. Under the averment of the plea the defendant had been in possession only three years when the ten year statute was repealed by that act.

In the case of *Wyatt v. Tisdale,* the evidence introduced by the defendant establishing his adverse possession and those through whom he claimed for more than twenty years was uncontroverted; and Justice COLEMAN

correctly held that the affirmative charge should have been given for him. This would have been true under the facts in the case had adverse possession been for the ten years prior to 1876, and the only expression in his opinion which can be construed as conflicting with this view is to be found in the following language: "Our statute prescribing the time within which suits must be brought which has been in force at least since the adoption of the Code of 1852, is as follows: 'Section 2613. *Limitations of twenty years: Within twenty years.*

1. Actions at the suit of the State against a citizen thereof for the recovery of real or personal property.

2. Actions by or for the use of any township for the recovery of any sixteenth section or other school lands belonging to the township.' "

The statement that subdivision 2 of section 2613 has been in force since the adoption of the Code of 1852 was an error. As we have shown, it had no existence until the adoption of the Code of 1886. In this respect the opinion must be modified. As persuasive that Judge COLEMAN recognized the rule as stated in the *Miller Case,* he cites it in two places and makes it the foundation of his opinion.

The case of *Prestwood v. Watson,* 111 Ala. 604, *supra,* was correctly decided upon the facts. The agreement of facts upon which it was tried will be found in 79 Ala. 417. It appeared that Cooper's possession, through whom the defendant claimed, commenced in 1875, only one year prior to the act of 1876. There being, then, no statute of limitations in force as against township trustees of school lands from November 30, 1876, until the adoption of the Code of 1886, and the suit being commenced in 1885 he could not have acquired the title within that period. Nothing short of twenty years adverse possession would have given him a title by prescription. So the court in that case properly said: "There was no hostile possession for that period, prior to the commencement of this suit, claimed in the court below, and if it had been claimed, it would not have found support in the evidence."

We are clearly of the opinion that the rights of the defendant or those under whom it claimed, had to be as-

serted within ten years after their accrual under the facts of this case as against the adverse possession of the plaintiff. There is one hundred and sixty acres of land in the northwest quarter of section sixteen claimed by plaintiff in this suit which he claims he got from his brother less 15 acres in the "Flats of Five Mile Creek." It appears, however, that as to forty-five acres, the plaintiff made declarations tending to show that he did not claim it under his exchange with his brother and that in the former suit between these parties he disclaimed any right, title and interest in this forty-five acres, and only claimed to own the one hundred acres. This forty-five acres, as was the greater portion of the one hundred acres, was woodland, mountainous and unsuitable for cultivation, and only valuable and useful for the timber upon it. The testimony of defendant also tends to show that the plaintiff exercised no acts of ownership over this forty-five acres, by getting wood, rails, timber, etc. from it, as was done by him over the other portion of the tract claimed by him in the first suit.

When the plaintiff acquired possession from his brother and the brother accepted the plaintiff's lands and went into the possession of them in the spring of 1865, the contract between them became executed, and the plaintiff's possession became adverse to him, notwithstanding the exchange was made by parol agreement. There can be no difference on principle between this case and where a verbal sale of lands is made and the purchaser put into possession upon the payment by him of the purchase money. In the latter case the purchaser's possession after paying the purchase price is presumed to be in his own right and is adverse to his vendor. If this possession continues for the statutory period of ten years without recognition of or subordination to the legal title of the vendor, the right of entry or action to recover the possession is barred.—*Potts v. Coleman*, 67 Ala. 221; *Tayloc v. Dugger*, 66 Ala. 451; *Beard v. Ryan*, 78 Ala. 37; *Newsome v. Snow*, 91 Ala. 641.

In *Normant v. Eureka Company*, 98 Ala. 181, this principle is distinctly and clearly announced, and Jus-

[Tennessee Coal, Iron & Railroad Co. v. Linn.]

tice COLEMAN in the opinion, in speaking of the extent of the adverse possession by the purchaser, said: "We are clearly of the opinion that the purchaser who pays the purchase money for land and takes possession of it under a legal contract of sale, whether verbal or written, has possession co-extensive with the lands included in his contract of purchase, and he may show the extent of his possession by the proof of the contract of sale and purchase, that in such case the contract will fix the boundary of his possession." Continuing he says: *"This principle applies as between vendor and vendee or in case of execution sale, to the defendant in execution and the purchaser at such sale.* It is not intended to modify or affect, in any way, the doctrine declared in the above authorities as to possession of mere trespassers or those who claim under color of title, but simply to declare that a valid contract of sale, fixes the extent of the possession of one entering upon and holding the possession under such a contract, just as the possession of one who is under color of title is limited by the description in the writing which confers color of title."

A majority of the court are of the opinion that the doctrine announced extending the adverse possession under a valid parol contract of sale to the boundary of the lands as fixed by the contract is limited in its application as between vendor and vendee, or in case of execution sale, to the defendant in execution and the purchaser at such sale. That when no such relation exists between the parties litigant or their privies that the possession of the adverse holder is limited to his *possessio pedis,* unless he holds under *written* color of title. In other words, to extend adverse possession beyond the actual possession the adverse holder must enter upon and hold the lands under a paper writing fixing its boundaries—that color of title cannot exist or be evidenced in any other way except where the relation exists between the parties litigant above pointed out. Furthermore they hold, this is the settled rule of law in this State, whatever may be the doctrine in other States and they must decline to depart from it. They rely upon *Hawkins v. Hudson,* 45 Ala. 482; *Bell v. Denson,* 56 Ala. 444; *Burks v. Mitchell,* 78 Ala. 61; *Clements v. Hays,* 76 Ala. 280, as supporting their views.

A careful examination of each of these cases in which it is held that it requires a written instrument to extend adverse possession to the boundaries of the tract claimed by the adverse holder, will show that the question was not involved in the decision of the cause. In no one of them except in the case of *Bell v. Denson* did the evidence disclose that the adverse holder was in possession claiming the lands under a valid parol contract in which the boundaries were fixed by such contract. And in *Bell v. Denson* the court expressly declares that the doctrine was not involved, and rests an affirmance of the case upon distinctly different grounds. Besides the force of the opinion as an authority for the rule under discussion is greatly impaired when considered in the light of its adjudication of the correctness of charge 5 given at the instance of the defendant to which the appellant excepted, which was in the following words: "That if the said Denson bought the land in dispute from Petit, under a parol contract, and at the time of the purchase paid any of the purchase money and went into possession of the land, then said Denson has an adverse possession of said lands, and is entitled to protect himself in this suit under an adverse claim, upon actual or constructive notice of such claim." In passing upon this charge among others given at the request of the appellee the court said: "It may be that one or more of the charges given at the request of the appellees had a tendency to mislead the jury. That, however, is not a reversible error; the appellants should have requested explanatory instructions. It cannot be affirmed that either of these charges is erroneous in the statement of legal principles."

Bearing in mind that the evidence disclosed no acts of possession by Denson upon the land, which consisted of a tract of three hundred and twenty acres of woodland, except the building of a house in which he resided, the enclosing, clearing and cultivating five or six acres and working on a portion for gold for a period of more than ten years, the charge was clearly erroneous unless the doctrine which I contend for is the law. Clearly if the rule obtains as announced by the other members of the court, the case should have been reversed.

To my mind it is clear Justice COLEMAN did not intend to say that the doctrine so clearly announced by him in *Normant's Case, supra,* was to be limited in its application as held by the majority of the court. On the contrary, he said expressly "that a valid contract of sale, fixes the extent of the possession of one entering upon and holding the possession under such contract, just as the possession of one who is under color of title is limited by the description in the writings which confer color of title."

I must confess my inability to comprehend the meaning of what seems to be plain and unambiguous language, if I am in error as to what he intended to say and did say. That he was correct in so holding I entertain no sort of doubt. The basis of the doctrine of adverse possession rests upon a possession under *bona fide* claim or color of title, open, notorious, continuous and hostile to the title of the true owner.—Mr. Freeman's note in case of *DeFriezc v. Quint,* 28 Am. St. Rep. 158.

Adverse possession rests in the intention of the possessor, and it is said "the intention guides the entry and fixes its character."—*Potts v. Coleman,* 67 Ala. 221; *Herbert v. Hanrick,* 16 Ala. 595; *Alexander v. Wheeler,* 69 Ala. 332. One of its essential elements as universally recognized by the courts and text writers is that the possessor must claim to own the lands independent of the title or claim of all other persons. If his possession is in recognition of another's title as superior to his, and it is not material who that other person may be, no length of time will ripen his holdings into a title by adverse possession, notwithstanding all the other essential elements of adverse possession may exist. The converse of this proposition is equally as sound. If he claims *bona fide* to own the lands and the other essential elements are shown, his possession, if for ten years, ripens into an indefeasible title, not only as against his vendor but against the world.—3 Brick. Dig. 17, § § 3, *et seq;* 1 Brick. Dig. 49, § § 9, *et seq.*

If the possessor acquires possession by a trespass, his possession is necesarily confined to his *possessio pedis,* for the obvious reason there is no means afforded by which his intention can be ascertained as to the extent

in area of his claim except the lands actually occupied by him. But if his entry is under a written instrument defining the boundaries, his possession extends to the boundaries named in the writing, for the reason that the writing furnishes the evidence of his intention to claim to this extent, and this too notwithstanding the writing is unrecorded, and the owner of the lands had no notice of its existence, and notwithstanding the writing is void as a conveyance of title.—*Stovall v. Fowler*, 72 Ala. 77; *Ryan v. Kilpatrick*, 66 Ala. 332; *Baucum v. George*, 65 Ala. 259; *Brady v. Huff*, 75 Ala. 80; *Childress v. Calloway*, 76 Ala. 128; *Watson v. Mancill*, 76 Ala. 600; *Farmer v. Eslava*, 11 Ala. 1028; *Hall v. Root*, 19 Ala. 378; *Hughes v. Anderson*, 79 Ala. 209.

It is evident that the notice to the owner of the claim of the adverse holder is not dependent upon a knowledge of the existence of the written instrument or of its contents under which such adverse holder claims title to the lands. It is the knowledge, either actual or imputable, of the possession of his lands by another claiming to own them *bona fide* and openly, that affects his right of entry.—*Brown v. Cockrell*, 33 Ala. 38; *Hughes v. Anderson, supra*. This being true, the only office or function which a written, unrecorded, void and otherwise unknown instrument, so far as the owner is concerned, can possibly fulfill is to afford evidence of the claim of the adverse holder and the extent of that claim. For if it were otherwise a trespasser could never acquire title by adverse possession. Just why a verbal contract fixing the boundaries of the purchaser's possession is not of equal dignity and entitled to the same weight, when clearly proven, as a void, unknown, unrecorded writing, to serve as a guide in determining his entry and fix its character, I am unable to see. The position taken by my brothers seems to me to be flagrantly illogical and certainly not conducive to justice and equity. For it may be and doubtless is oftentimes the case that the adverse holder knows his deed is void, paying a consideration for the lands in proportion to his chances of success to remain in possession for ten years, and yet he is protected to the full extent of the boundaries described in

his void deed, while the innocent purchaser who may have paid full value, under a verbal contract, is restricted to his *possessio pedis.* The great weight of authority in this country sustains me in my views as will be seen from an examination of the following authorities: 1 Am. & Eng. Encyc. Law (2d ed.), 848; Tyler on Ejectment, 863; 2 Smith Lead. Cas. (8th Am. ed.) 711; *Green v. Kellum,* 2 Penn. St. 258; *McCall v. Neely,* 3 Watts, 72; *Tate v. Southard,* 14 Am. Dec. note, 581; *La Frombois v. Jackson,* 8 Cowen, 589; *Van Cleave v. Milliken,* 13 Ind. 108; *Baker v. Hall,* 6 Baxter 48; *Teabout v. Daniels,* 38 Iowa 161; *Rannels v. Rannels,* 52 Mo. 108; *MaGee v. MaGee,* 37 Miss. 138.

The plaintiff in this case was not a trespasser. He had paid the purchase price of the land, and it was of no consequence whether his brother had paid the purchase money to the township trustees for it. If he had not, this could not have affected the plaintiff's rights, if he claimed to own it, as he did, as against them.—*Beard v. Ryan,* 78 Ala. 37; *Tayloe v. Dugger,* 66 Ala. 444.

A majority of the court hold in consonance with their views that charges 1 and 2 requested by the defendant should have been given. Under the views which I entertain, they were properly refused, for the reason that as to the one hundred acres of the land acquired by the plaintiff under his contract of exchange, he was entitled to have the court charge affirmatively that he was entitled to recover it. As to whether he was entitled to recover the forty-five acres was a matter of dispute to be determined by the jury, there being a dispute as to whether it was included in the contract with his brother. And this I conceive to be true, notwithstanding he may not have known the location of the boundary lines, but if he claimed to them and they were capable of being ascertained under his contract of exchange.

There is no difference of opinion between us as to any other point in the case.

What we have said disposes of all the charges refused to the appellant except charge No. 7. This charge bases the defendant's right to a verdict to a certain portion of the land in controversy upon the theory that his disclaimer to that portion in the former suit estopped him

to claim it in this suit. Whether this would have been true if there had been a judgment rendered against him upon his disclaimer, we do not decide. The record discloses that it was merely an unsworn plea filed by him or his attorney in the former suit and fails to disclose any action, if any, was taken upon it. It is too well settled to need a citation of authorities that unsworn pleadings are mere suggestions of counsel and therefore not binding upon the party litigant in whose behalf they are filed, and was not properly admissible in evidence. This was an error of which the appellant cannot complain, nor of the ruling of the court in limiting its effect.

The only other matter not disposed of was the ruling of the court in permitting the plaintiff to prove that it was generally known in the neighborhood that the land belonged to him against the objection of the defendant. We understand the rule to be that the existence of a fact cannot be proved by reputation or notoriety, yet where the fact is otherwise established, general notoriety in the neighborhood may be proved as competent evidence to charge a resident in such vicinity with knowledge of it. There was no error in admitting this testimony under the facts of this case.—*Woods v. Montevallo C. & T. Co.*, 84 Ala. 564; *Humes v. O'Bryan*, 74 Ala. 81; *Price v. Mazange & Co.*, 31 Ala. 701.

For the error, as held by the other members of the court, committed in refusing charges 1 and 2, the judgment must be reversed and the cause remanded.

Reversed and remanded.